Herman McMURRY, Plaintiff,

v.

Michael SHEAHAN, in his official capacity as Sheriff of Cook County and his individual capacity; Aurelia Pucinski, in her individual capacity and in her official capacity as Clerk of the Circuit Court of Cook County; City of Chicago, a Municipal Corporation; Chicago Police Officer E. Foley, Star No. 17601, in his official capacity and in his individual capacity; and J.W. Fairman, Jr. in his individual capacity, and in his official capacity as Executive Director of the Department of Corrections, Defendants.

No. 95 C 0999.

United States District Court,
N.D. Illinois.

May 15, 1996.

Fred I. Benjamin and Paul Richard Kesselman, Benjamin & Shapiro, Ltd., Chicago, IL, for plaintiff.

Terry L. McDonald, Michael David Jacobs, Connie R. Sprovieri–Barba, Cook County State's Attorney, Chicago, IL, Robert F. Cleary, Attorney General's Office, Chicago, IL, and David C. Schott, for defendants.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Herman M. McMurry, has filed a fourteen count amended complaint against defendants: Michael Sheahan, individually and in his official capacity as Sheriff of Cook County, Illinois; Aurelia Pucinski, individually and in her official capacity as Clerk of the Circuit Court of Cook County, Illinois; The City of Chicago; J.W. Fairman, Jr., individually and in his official capacity as the Executive Director of the Department of Corrections and Cook County Jail; and Chicago Police Officer E. Foley, individually and in his official capacity. Plaintiff alleges federal civil rights violations, pursuant to 42 U.S.C. § 1983, as well as violations of state common law.

Plaintiff alleges he was attacked and homosexually raped while awaiting court ordered release from Cook County jail after having been unlawfully arrested on an invalid warrant. Counts I and II are brought against Sheahan in his individual and official capacity, respectively, as Sheriff of Cook County for his failure to properly maintain a computer system to process quashed and recalled orders, resulting in plaintiff's unlawful arrest. Counts III and IV are brought against Pucinski in her official capacity as Clerk of the Circuit Court of Cook County for maintaining a policy and/or practice of not entering quash and recall orders, which resulted in plaintiff's unlawful arrest, and for a failure to provide access to files and computer records, which resulted in plaintiff's incarceration for

additional days. Count V is brought against Pucinski individually for her failure to correct these deficiencies despite actual knowledge that hundreds of individuals were arrested each year on invalid warrants.

Counts VI and VII are brought against defendant Fairman individually and in his official capacity as Executive Director of the Cook County Department of Corrections for failing to protect plaintiff from attack. Count VIII is brought against the City for maintaining a practice of failing to properly train and supervise its employees with regard to investigating warrants, despite its knowledge that quash and recall orders are not being processed. Counts X and XI are brought against all defendants under section 1983 for false arrest and imprisonment, alleging violations of plaintiff's Fourth and Fourteenth Amendment rights under the Constitution.

Counts X and XI, XII, XIII and XIV are state law claims for negligent and intentional false imprisonment against all defendants in both their official and individual capacities. The court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367. All defendants have moved to dismiss the amended complaint. For the reasons set forth below, the motions are denied in part and granted in part.

### FACTS

According to the complaint, which the court accepts as true for the purposes of 12(b)(6), on Friday July 1, 1994, at or about 9:20 p.m., Foley stopped plaintiff for a routine traffic violation. Following procedure, Foley, checked his computer system and found that there was an outstanding warrant for plaintiff's arrest. Plaintiff had, however, already appeared in court and the warrant had been quashed. Plaintiff alleges that he told Foley that any and all warrants for his arrest had been quashed and that he had the receipts at home proving that he had made restitution and could produce those receipts. Foley refused to listen, and arrested plaintiff on the warrant. According to plaintiff, and it is undisputed by defendants, the warrant was, as plaintiff had tried to explain, no longer valid. It was, however, still active on the sheriff's computer and/or the LEADS[1] system.

According to the complaint, defendants use various law enforcement computer networks that list outstanding warrants. Since 1982, the Sheriff of Cook County has used a computer called SPWA to track active warrants. After a warrant issues from or is recalled by a court in Cook County, the Clerk of the Circuit Court puts a copy into a Sheriff's basket at the Clerk's office. An employee of the Sheriff's office periodically picks up these papers so that warrant clerks can enter them into SPWA. The Clerk's office keeps a computer database of felony warrants and every month sends the Sheriff a list of non-traffic warrants and recall orders so the Sheriff can update his computer records. Although only the Sheriff's office has direct access to SPWA, other law enforcement agencies often ask for information by telephone or teletype, and the Sheriff obliges.

LEADS is a database that is supposed to include all active warrants in the state. Its purpose is to enable law enforcement agencies to access and post information about arrest warrants, which are supposed to be validated and purged on a regular schedule. Any officer who stops a motorist or questions a passerby can check with LEADS or SPWA to determine if there is an outstanding warrant for that person. Plaintiff alleges that the system is a total failure and cannot be relied upon.

Despite plaintiff's protestation that the computer system was incorrect, Foley arrested and incarcerated plaintiff on Friday July 1, 1994. After spending the weekend in jail, plaintiff was first allowed to appear before a judge on July 5, 1994. At that time, Judge L. Green determined that the warrant had in fact been quashed and ordered plaintiff's release. Plaintiff, however, was not immediately released. Instead, he was returned to

---

**1.** The principle statewide computer network is known by the acronym LEADS and is managed by the Illinois state police.

the sheriff's custody and incarcerated at Cook County jail again, awaiting processing. He was not "processed out" until three a.m. the next day, over ten hours later. While in the sheriff's custody, plaintiff, who was guilty of nothing and never even charged with a crime, was placed in the general prison population[2] at Cook County Jail, where he was raped and sexually assaulted by other unknown inmates.

## MOTION TO DISMISS

All defendants have moved to dismiss the complaint. A motion to dismiss pursuant to Fed.R.Civ.Pro. 12(b)(6) is not a test of the merits of the claim, but rather a test of whether the plaintiff has properly stated a claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). When deciding a motion to dismiss, the court must accept all well pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Lashbrook v. Oerkfitz*, 65 F.3d 1339, 1343 (7th Cir.1995). The court will dismiss the complaint only when it appears beyond a doubt that the plaintiff can prove no consistent set of facts entitling him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984).

## DISCUSSION

## FEDERAL CLAIMS

### Defendants Pucinski and Sheahan in Their Individual Capacity

Counts II, V, XI, and XII assert liability against Pucinski and Sheahan in their individual capacity, for violation of federal law pursuant to 42 U.S.C. § 1983 for their participation in the failure to input the judicial quash and recall orders in the respective computer systems resulting in plaintiff's unconstitutional arrest. Individual

capacity lawsuits seek to impose personal liability on government officials for actions taken under color of state law. *Townsend v. Fairman*, No. 95 C 0882, 1996 WL 99914, at *2 (March 1, 1996 N.D.Ill.). To state a claim for personal liability under section 1983, a plaintiff must allege that defendants were personally involved in the deprivation of his constitutional rights. *Whitford v. Boglino*, 63 F.3d 527, 530–31 (7th Cir.1995). "Personal involvement" requires an overt act, or a failure to act "with a deliberate or reckless disregard of plaintiff's constitutional rights ..." *Black v. Lane*, 22 F.3d 1395, 1401 (7th Cir.1994). The official need not have directly participated in the alleged constitutional deprivation. It is enough that the conduct causing the constitutional deprivation occurs at the direction or knowledge and consent of a defendant who is in a supervisory position over others. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir.1995). The supervisor must "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir.1988).

Plaintiff alleges that both Sheahan and Pucinski unquestionably knew of the deficiencies in their system and yet did nothing to correct them. Plaintiff alleges that Sheahan and Pucinski were both on actual notice of the foreseeable results of their possibly deficient policies and practices due to the prior lawsuits filed against each of them in this district court.[3] Plaintiff alleges that Pucinski specifically had knowledge of the deficiency in these policies because her predecessor was a named party in *Murray v. City of Chicago*, 634 F.2d 365, 367 (7th Cir.1980), in which the court found that judicial orders quashing and recalling warrants were not being transmitted by her office to the appropriate law enforcement agencies, and that this failure resulted in unconstitutional arrests identical to that suffered by plaintiff. Further, plain-

**2.** It is not clear to this court why petitioner was placed in general population at Cook County Jail. According to § 701.70 of the Illinois Administrative Rules, those awaiting sentencing should be separated from those in pre-trial, and non-criminal offenders shall be kept separated from persons charged with criminal offenses. Additionally, the rule strongly recommends that

misdemeanants be housed separately from felons.

**3.** See, for example, *Ruehman v. Sheahan*, 34 F.3d 525 (7th Cir1994); *Hvorcik v. Sheahan*, 847 F.Supp. 1414 (N.D.Ill 1994); *Watson v. Sheahan*, No. 94–6891.

tiff also alleges that Sheahan has had actual knowledge due to the numerous lawsuits that have been filed against the Sheriff alleging the same constitutional violations.[4]

Although Sheahan and Pucinski deny personal involvement in the wrongful arrest of plaintiff, they are the persons responsible for setting the policies and mandating the procedures in their respective offices. Plaintiff has alleged sufficiently that these defendants knew of the many problems which plague both the sheriff's computer and the LEADS system. Plaintiff further alleges that defendants chose to ignore those problems and conduct business as usual. A more straightforward direct allegation of a supervisor turning a blind eye would be difficult to find.

▮▮▮ Finally, Pucinski and Sheahan claim that they are entitled to a defense of qualified immunity. Qualified immunity shields state actors from damages resulting from liability for constitutional violations if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Sheahan and Pucinski assert that plaintiff has not alleged a "clearly established" constitutional right was violated. This court disagrees. Sheahan and Pucinski's alleged actions were not objectively reasonable in light of clearly established law. As Judge Easterbrook stated in *Ruehman,* "Qualified Immunity protects those who act in the shadow of legal uncertainty." 34 F.3d at 527. Here, there is no legal uncertainty. An arrest on an invalid warrant unquestionably violates the constitution. *See Murray,* 634 F.2d at 366. In allegedly allowing hundreds of people to be arrested on invalid warrants by failing to correct a computer system that was fraught with problems that were known to both Pucinski and Sheahan, Pucinski and Sheahan have violated plaintiff's clearly established right to be free from such an unlawful arrest. For the above men-

tioned reasons, Pucinski and Sheahan's motion to dismiss counts II, V, XI, and XII are denied.

### Defendant Fairman in His Individual Capacity

▮▮▮ Counts VII, IX, and XII assert liability against Fairman individually for violation of federal law pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Fairman failed in his duty to make certain that plaintiff remained healthy, safe and free from criminal assaults while incarcerated after his judicial release. As noted above, in order to assert individual liability against Fairman, plaintiff must allege that Fairman not only had personal knowledge of excessive risk of harm to the detainee, but that he also chose to disregard that risk. *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Plaintiff's claim against defendant Fairman individually, however, must be dismissed. Because the complaint does not allege that Fairman was privy to any information that would allow a reasonable finder of fact to conclude that he ignored an excessive risk of harm to this particular plaintiff, individual liability cannot exist. *Woodget v. CCDOC,* 1994 WL 695453 *2 1994 U.S. Dist. LEXIS 176939, *4–5. Counts VII, IX, and XII as to Fairman must be dismissed.

### Defendants Sheahan And Fairman in Their Official Capacities

▮▮▮ Counts I, VI, IX, and XII allege liability against Sheahan and Fairman in their official capacities. A suit against a government officer in his official capacity is actually a suit against the government entity for which the officer works. *Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 3104–05, 87 L.Ed.2d 114 (1985). To state a cause of action for official liability a plaintiff must allege that the defendant promulgated or enforced a policy or custom in his official capacity as one with decisional authority,

---

**4.** *Hunter v. Sheahan,* case no. 94 C 2631 filed 4/29/94; *Huyser v. Sheahan,* case no. 94 C 3132 filed 5/20/94; *Simpson et at. v. Sheahan,* case no. 94 C 5375 filed 9/1/94; *Jordan v. Sheahan,* case no. 5443 filed 9/6/94; *Grant v. Sheahan,* case no. 94 C 6164 filed 10/12/94; *Newell v. Sheahan,* case no. 94 C 6163 filed on 10/12/94; *Watson v. Sheahan,* case no. 94 C 6891 filed on 11/18/94; *Rahman v. Sheahan,* case no. 94 C 6892 filed 11/18/94; *Sutton v. Sheahan,* case no. 94 C 6893 filed on 11/18/94.

which led to the deprivation of plaintiff's constitutional rights. *Monell v. Department of Social Services of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1977). Thus, to be liable under section 1983, the governmental entity, through its officers, in establishing or maintaining a policy or custom, must be the moving force behind the deprivation. *See Id.*

It is not necessary, however, for an "actual" policy to exist in order to establish liability. In the absence of a formal policy, if the plaintiff can establish a *Monell* "custom or practice," he can prove liability. *Hvorcik,* 847 F.Supp. at 1418. A municipal "custom" may be established by proving that the policymaking officials had knowledge of and acquiesced in the established practice. *Felton v. Board of Commissioners,* 5 F.3d 198, 203 (7th Cir.1993). The continual use of a particular practice would support the inference that policymaking officials were deliberately indifferent to the practice and yet continued to use it anyway. *See City of Canton v. Harris,* 489 U.S. 378, 390, 109 S.Ct. 1197, 1205–06, 103 L.Ed.2d 412 (1989).

In the instant case, plaintiff has sufficiently alleged policies and customs of the Sheriff of ignoring deficiencies in their systems which resulted in unlawful arrest. This amounts to a "deliberate indifference" of plaintiff's rights. *See Hvorcik,* 847 F.Supp. at 1414–1416. Sheahan allegedly had actual knowledge that hundreds of individuals each year in Cook County are arrested on invalid warrants which have been previously quashed and recalled by the Circuit Court, due in many cases to the failure of the Clerk to transmit quash and recall orders to the Sheriff of Cook County and other law enforcement departments. Sheahan, additionally, had notice that each year hundreds of individuals are arrested on invalid warrants listed on computer networks used by the defendants. The very fact that this occurs with such frequency is, in and of itself, evidence of a policy sufficient to impose liability. *See Murray,* 634 F.2d at 367. Sheahan allegedly continues to rely upon a flawed computer system. This continued reliance has resulted in an abundance of litigation involving Sheahan, litigation which has alerted

Sheahan to the problem, but which has not caused him to do anything to rectify it. Sheahan has in fact acquiesced to a pattern of conduct which he knew, or had reason to know, was not sufficient to protect plaintiff's constitutional rights. Plaintiff has clearly alleged a policy, practice, or custom implemented and followed by the Sheriff with regard to quashed and recalled warrants. Plaintiff also alleges adequately an unlawful policy of Sheahan and Fairman by detaining judicially dismissed persons for upwards of 10 hours. In a case currently pending, *Watson v. Sheahan,* No. 94 C 6891, Sheahan and Fairman concede that the release procedures constitute an official custom or practice of the Sheriff's office. These procedures for releasing inmates from the jail after their court appearances have remained constant since 1987. *Id.* Because Sheahan and Fairman have admitted that their release procedures cause judicially discharged individuals to be detained for at least 10 hours, and that such detentions are the rule rather then the exception, plaintiff has sufficiently alleged enough facts in his complaint to establish a policy or custom to support his section 1983 claim.

In fulfilling the causation prong of *Monell,* plaintiff claims that his constitutional rights under the Fourth and Fourteenth Amendments have been violated as a result of these inadequate policies. When a person is held without a legal basis, a deprivation of the individual's liberty is involved. *See Powe v. City of Chicago,* 664 F.2d 639, 644 (7th Cir.1981). The Seventh Circuit held in *Lewis v. O'Grady,* 853 F.2d 1366, 1370 (7th Cir. 1988), that an unreasonable administrative delay by the Sheriff of Cook County in processing the release of an inmate from custody could violate an individual's Fourth Amendment rights. Many courts have held that a detainee has a substantive due process right to be released within a reasonable time after law enforcement officials have learned that he is innocent of charges on which he was being detained. *Pennington v. Hobson,* 719 F.Supp. 760, 779 (S.D.Ind.1989), *accord Williams v. Heard,* 533 F.Supp. 1153, 1159 (S.D.Tex.1982). Certainly plaintiff has sufficiently plead that the failure to take routine

steps in releasing an innocent person may be a violation of plaintiff's rights. *See Johnson v. City of Chicago,* 711 F.Supp. 1465, 1470 (N.D.Ill.1989).

Sheahan and Fairman allege, however, that plaintiff has established no nexus between being detained for a lengthy period of time, and the brutal attack which he suffered. This court disagrees. Reading the complaint liberally, plaintiff alleges that because he was improperly arrested before his ordered release, he should not have been detained in general population under the same conditions as properly detained pretrial detainees. Therein lies the nexus between the alleged assault and the prolonged detention that defendants are lacking. Plaintiff has sufficiently stated facts that would establish that there was a policy or custom which was established or followed by Sheahan and Fairman, and that this policy may have violated plaintiff's constitutional rights.

Because plaintiff has sufficiently alleged a claim against defendants Sheahan and Fairman in their official capacities, their motions to dismiss counts I, VI, IX, and XII are denied.

### Defendant Pucinski in her Official Capacity

Counts III, IV, IX, and XII assert liability against Pucinski in her official capacity. Pucinski cannot be held liable in her official capacity under section 1983 because the state is not a "person" to whom section 1983 was meant to apply and therefore cannot be sued. *Will v. Michigan Department of State Police,* 491 U.S. 58, 65, 109 S.Ct. 2304, 2309, 105 L.Ed.2d 45 (1989). Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a state. *Id.*

Since the clerk of a circuit court is defined by Illinois law as being an employee of the state and functions as such in that she is an employee of the state judiciary not limited by county personnel rules, a damages suit against Pucinski in her official capacity must be considered a suit against the state. Ill. Const. Art. 6, § 18(b); *Ruehman v. Village of Palos Park,* No. 91 C 8355, 1992 WL 281352, at *2 (Oct. 7, 1992 N.D.Ill.). There-

fore, all claims against Pucinski in her official capacity, counts III, IV, IX, and XII, are dismissed.

### Officer Foley in His Official Capacity

Foley has moved to dismiss all official capacity claims against him, citing *Flores v. City of Chicago,* 682 F.Supp. 950, 953 (N.D.Ill.1988), for the proposition that as a rank and file police officer, he has no "official capacity" as that "term-of-art" applies to civil rights claims. Plaintiff has agreed, and all references to allegations against defendant Foley in his official capacity are dismissed.

### The City and Foley Under the Fourth and Fourteenth Amendment

Counts IX and XII of plaintiff's complaint, although titled false imprisonment and false arrest, assert claims for violations of plaintiff's Fourth and Fourteenth Amendment rights. The City and Foley argue, however, that plaintiff does not state a Fourth Amendment claim, but instead plaintiff's claim falls only under Fourteenth Amendment jurisprudence. The City and Foley rely on the Seventh Circuit's opinion in *Patton v. Przybylski,* 822 F.2d 697 (7th Cir. 1987), in which the court outlined the applicability of the Fourth and Fourteenth Amendments in detention cases. The court held that when an arrest is made and the arrestee is held in jail without investigation, there are serious constitutional questions may arise from either the Fourth Amendment, if the arrest was improper, or the Fourteenth Amendment, if the arrest was proper but the arrestee was denied due process once having been incarcerated. *Id.* at 700–01.

The City and Foley assert that plaintiff was lawfully arrested for a traffic violation and, therefore, under *Patton* only the Fourteenth Amendment is implicated. The City and Foley are wrong. Although plaintiff was originally stopped for an alleged traffic violation, plaintiff alleges that Foley explicitly stated to plaintiff that he was being arrested because the computer indicated an open warrant that, in fact, had previously been quashed or recalled. It was then that Foley violated plaintiff's Fourth Amendment rights by arresting him on that invalid warrant. Plaintiff additionally alleges that the city vio-

lated those same rights by not properly training Foley to make any inquiry into the validity of that warrant when there was sufficient reason to believe that the warrant was invalid.

Foley asserts, however, that his arrest of plaintiff was proper because the warrant was facially valid, relying on *Mitchell v. Aluisi*, 872 F.2d 577, 578–79 (4th Cir.1989) and *United States v. McDonald*, 606 F.2d 552, 553–54 (5th Cir.1979). These cases held that an officer did not violate an arrestee's Fourth Amendment rights in executing a warrant which, although facially valid, had been quashed, despite the arrestee's protest that such warrant had been quashed. *Id.* Once again, however, defendant's reliance is misguided. In both *Mitchell* and *McDonald*, the officers had reason to believe that the process by which they were informed of outstanding warrants was reliable. In the instant case, however, plaintiff has alleged that all defendants including Foley know that the system is an utter failure and cannot be relied upon. As Justice O'Connor stated in her concurring opinion of *Arizona v. Evans*, —— U.S. ——, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995), "surely it would not be reasonable for the police to rely, say, on a recordkeeping system, their own or some other agency's, that has no mechanism to ensure its accuracy over time and that routinely leads to false arrests." Here, plaintiff alleges that Foley should have known that his computer check was unreliable.

Nor is Foley entitled to qualified immunity. As previously stated, Foley's actions in relying on a inaccurate computer system were not objectively reasonable in light of clearly established law. Qualified Immunity shields state actors from liability for constitutional violations if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Williams v. Anderson*, 959 F.2d 1411, 1414 (7th Cir.1992). Here, Foley's conduct was unreasonable because he knew or should have known that each year hundreds of people are arrested on previously quashed or recalled warrants, that the warrant at issue was approximately two years old, that plaintiff made repeated state-

ments to Foley that the warrant had been quashed and that he had proof thereof. Additionally, the fact that the arrest was made on an invalid warrant is sufficient to state a cause of action for a violation of a clearly established law. Foley is not entitled to the defense of qualified Immunity.

The City asserts that plaintiff fails to state a federal civil rights claim against them because he fails to allege either a constitutional violation or a policy, practice, or custom. Because plaintiff has sufficiently stated a constitutional deprivation of his Fourth Amendment rights, plaintiff can contest the City's policy and/or practice regarding supervision and training of officers in post-arrest investigation to verify the validity of a warrant. The City's failure to train its officers to check for such errors would make the City liable to plaintiff for this violation of his Fourth Amendment rights. The City has had actual knowledge since 1980 that the warrant computer systems at issue are not reliable. *See Murray*, 634 F.2d at 365; *Hvorcik*, 847 F.Supp. at 1414; *Ruehman v. Village of Palos Park*, 1992 WL 170565 at *3 (July 16, 1992 N.D.Ill.). Additionally, in June of 1981, the Chicago Police Department conducted an internal review of the procedures it followed regarding recalled warrants, which indicated that improvements to the system were "imperative." Yet the City has taken no steps to remedy its procedures for investigating the validity of warrants shown by its computer to be outstanding. Knowing that the warrant computer system is completely inadequate to facilitate proper arrests, the City failed to train its officers to compensate properly for this inadequacy. Plaintiff has sufficiently stated a claim under the Fourth and Fourteenth Amendments against the City and Foley, and their motions to dismiss these claims are denied.

## STATE CLAIMS

### Fairman, Foley, the City, Sheahan and Pucinski for False Arrest/Imprisonment

Counts X, XI, XIII, and XIV are state law claims alleging both wrongful arrest and incarceration. A person who has

been falsely arrested is at the same time falsely imprisoned, and an unlawful arrest may support a cause of action for either false arrest or false imprisonment. *Dutton v. Roo–Mac, Inc.,* 100 Ill.App.3d 116, 119, 55 Ill.Dec. 458, 426 N.E.2d 604 (2nd Dist.1981). As with plaintiff's similar Fourth Amendment claim, a plaintiff in a false imprisonment action must show that the restraint was either unreasonable or without probable cause. *Meerbrey v. Marshall Field & Co.,* 139 Ill.2d 455, 475, 151 Ill.Dec. 560, 564 N.E.2d 1222 (1990).

 Sheahan, Fairman, Foley, and the City assert that the false arrest/imprisonment claims are barred by the Illinois Tort Immunity Act, 745 ILCS 10/2–101 et seq. ("the Act"). Under the Act, a public employee is "not liable for his act or omission in the execution or enforcement of any law unless such an act or omission constitutes willful and wanton conduct." *Hvorcik,* 847 F.Supp. at 1424. Willful and wanton conduct is defined as conduct which is "intentional or committed under circumstances exhibiting a reckless disregard for the safety of others." *Id.* It is apparent, however, that the inquiry into what conduct will constitute willful and wanton is "no different then what is required to show 'deliberate indifference'" in the context of the previously discussed section 1983 claims. *Id.* Therefore, the conclusions stated as to plaintiff's § 1983 claims in the preceding sections apply with equal force to the state law claims for false imprisonment/arrest.

### CONCLUSION

Accordingly, for the foregoing reasons, Sheahan's motion to dismiss any and all counts is denied. Pucinski's motion to dismiss is granted as to Counts III, IV, and the official capacity claims within Counts IX and XII, and denied as to Counts V, X, XI, XIII, XIV, and the individual capacity claims within Counts IX and XII. Fairman's motion to dismiss is denied as to Counts VI, X, XI, XIII, XIV, and the official capacity claims within Counts IX and XII, and granted at to Count VII and the individual capacity claims within Counts IX and XII. Foley's motion to dismiss all claims against him in his official

capacity is granted, but denied as to those claims charged against him in his individual capacity. The City's motion is denied as to all Counts directed against it.

Plaintiff is directed to file an amended complaint on or before June 3, 1996, consistent with this opinion, setting forth the remaining claims against each defendant, and labeling each count corresponding to the statutory, constitutional or legal theory asserted. Defendants shall file their answers on or before June 24, 1996. The status report currently set for May 21, 1996, shall remain in effect.