Robert BILLS, a Minor, by his parents
and next friends, Sean BILLS and
Debbie Bills, Plaintiff,

v.

HOMMER CONSOLIDATED SCHOOL DISTRICT NUMBER 33–C, a municipal corporation; Douglas Sisterson, individually and in his official capacity; and Ernst Jolas, individually and in his official capacity; and Deputy Joseph Kamarauskas, individually and in his official capacity, Defendants.

No. 96 C 6431.

United States District Court,
N.D. Illinois,
Eastern Division.

March 14, 1997.

Edward M. Fox, Alan J. Shefler, Shefler and Berger, Ltd., Chicago, IL, for Plaintiff.

Heidi Ann Katz, Robert E. Riley, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Chicago, IL, Nicholas Evans Sakellariou, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Joliet, IL, for Homer Consolidated School Dist. No. 33–C, Douglas Sisterson, Ernst Jolas.

Bruce K. Shapiro, Paul M. Heller & Associates, Ltd., Chicago, IL, Norma Jean Guess, Daniel C. Shapiro, Moss & Bloomberg, Ltd., Bolingbrook, IL, James Gus Sotos, Dana M. Shannon, Jason W. Rose, Hervas, Soto & Condon, P.C., Itasca, IL, James Constantine Vlahakis, Hernas, Sotos, Longdon & Bersani, Itasca, IL, for Joseph Kamarauskas.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

■ This case has its origin in events that began on February 5, 1996.[1] That day, Ho-

---

1. For purposes of this Motion to Dismiss, I accept the truth of the facts alleged in the complaint. In addition, I may consider facts plaintiff alleged in his state court action. *Henson v. CSC Credit Services*, 29 F.3d 280, 284 (7th Cir.1994) (concluding that the district court could properly consider matters of public record including pub-

mer Consolidated School District No. 33–C ("School District") officials found a fire burning in a locker at Schilling Elementary School where plaintiff Robert Bills was a fifth grade student. The Schilling School Principal Ernst Jolas and Will County Police Officer Joseph Kamarauskas began investigating this incident, and as a result, found a hand-held propane torch in a locker near the one where the fire occurred. Beginning on February 5 and continuing daily at least through February 9, Kamarauskas, Jolas, and other school officials questioned plaintiff, sometimes outside the presence of his parents, in connection with the fire. On February 8, 1996, a Schilling School student who was an acquaintance of plaintiff's, admitted to starting the fire with matches, not the propane torch. On February 9, Kamarauskas pulled plaintiff out of class, questioned him in an allegedly coercive manner, and extracted a signed confession wherein plaintiff admitted bringing the torch to school and giving it to the boy who admitted starting the fire.

After plaintiff signed the confession, a series of significant events ensued. On February 13, plaintiff and his parents received a notice that the School District intended to suspend plaintiff from school and recommend his expulsion for the remainder of the 1995–1996 school year and for the whole 1996–1997 school year. Subsequently, the school district suspended plaintiff for ten days.[2] Then, on February 20, plaintiff's parents requested a hearing on the suspension and expulsion issues. On February 22, plaintiff was redesignated as non-learning disabled. Previously, plaintiff had been classified as Learning Disabled since first grade. On May 7, 1996, plaintiff and his parents attended a school disciplinary hearing at which the School District's Board of Education took action to expel him from school.

On June 11, 1996, plaintiff filed a complaint in Illinois state court alleging constitutional deprivations under 42 U.S.C. § 1983. On September 20, 1996, the court found plaintiff engaged in gross and serious misconduct by bringing a torch to school, but the school board's expulsion of plaintiff beginning May 8, 1996 through the end of the 1996–1997 school year was excessive and an abuse of discretion not supported by plaintiff's conduct. Thereupon, plaintiff resumed school, and he continues to attend school at the present time.

On October 2, 1996, plaintiff filed a complaint seeking primarily monetary, declaratory, and injunctive relief against the School District, Douglas Sisterson (President of the Board of Education for the Homer district), Ernst Jolas (these first three defendants shall be collectively designated the "School District Defendants"), and Deputy Joseph Kamarauskas in federal court alleging constitutional deprivations under 42 U.S.C. § 1983. Plaintiff asserted the following six counts:

(1) Kamarauskas and Jolas, in their individual capacities, violated plaintiff's Fourth, Fifth and Sixth Amendment rights by unreasonable seizures and interrogations;

(2) Jolas and Sisterson, in their individual capacities, violated plaintiff's substantive and procedural due process rights under the Fourteenth Amendment by reclassifying his status, conducting an unfair disciplinary hearing and expelling him;

(3) Jolas and Sisterson, in their individual capacities, violated plaintiff's equal protection rights under the Fourteenth amendment by reclassifying his status and expelling him;

(4) Kamarauskas, in his official capacity, maintained a policy that violated plaintiff's Fourth amendment rights by unreasonable seizures and interrogations;

(5) Sisterson, in his official capacity, and the School District maintained policies that violated plaintiff's due process and equal protection rights by expelling him and reclassifying his status;

(6) Jolas, Sisterson and the Homer School District improperly reclassified plaintiff's status and expelled him in violation of his Fourteenth amendment due process rights.

lic court documents filed in an earlier related state court case on a motion to dismiss)

**2.** Plaintiff alleged this fact only in his state complaint, and in his federal complaint he fails to clarify the total duration of his suspension.

Now, the School District Defendants move to dismiss the complaint as to them under Rule 12(b)(1) and under Rule 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim, respectively. The School District Defendants move for dismissal alleging several alternative grounds: (1) res judicata; (2) abstention; (3) failure to exhaust administrative procedures; (3) qualified immunity; and (4) failure to allege facts sufficient to state a claim.

## ANALYSIS

On a motion to dismiss, the court tests the sufficiency of the complaint, not the merits of the lawsuit. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). The court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *Dimmig v. Wahl*, 983 F.2d 86, 87 (7th Cir.1993). A court will only grant a motion to dismiss if it is clear that the plaintiff cannot prove any set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### A. Exhaustion of Administrative Remedies

■ The defendants move to dismiss Counts II, III, V and VI based on plaintiff's alleged failure to exhaust his administrative remedies under the Individuals with Disabilities Education Act ("IDEA").[3] The IDEA limits any civil action, including a civil rights action, when relief is available under the IDEA unless the administrative process has first been exhausted. 20 U.S.C. § 1415(f). There are numerous reasons for requiring exhaustion of administrative remedies, including: (1) to permit an agency to exercise its discretion and expertise; (2) to develop technical issues and a factual record prior to judicial review; (3) to prevent circumvention of agency procedures; and (4) to avoid unnecessary judicial review by allowing agencies to correct errors. *See Doe v. Alfred*, 906 F.Supp. 1092, 1097 (S.D.W.Va.1995) (citing *Association for Commun. Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir.1993); *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir. 1992)).

■ Could plaintiff have sought relief for the claims alleged in Counts II, III, V, and VI under the IDEA? The IDEA provides relief for "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(1)(E). Here, plaintiff asserted claims in Counts II, III, V and VI relating to the reclassification of the his Learning Disabled ("LD") status and to his expulsion. These claims relate to plaintiff's opportunity to receive a free appropriate public education and to his educational placement. Therefore, I find that plaintiff could have asserted these claims under the IDEA.[4] *See, e.g., Waterman v. Marquette–Alger Intermediate Sch. Dist.*, 739 F.Supp. 361, 365 (W.D.Mich.1990) (dismissing complaint for lack of exhaustion where "all of plaintiffs' claims arise from defendants' allegedly excessive disciplinary acts and practices").

Plaintiff acknowledges that Count II is based on the IDEA, but contends that Counts III, V and VI are asserted under other legal theories. "[A]ny pupil who wants 'relief that is available under' the IDEA must use the IDEA's administrative system even if he invokes a different statute." *Charlie F. v. Board of Educ. of Skokie School Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996) (holding that student who sued school

---

3. Defendants asserted this motion under Rule 12(b)(1), based on a lack of subject matter jurisdiction. Although some courts have treated challenges to the exhaustion of administrative remedies as a jurisdictional issue, *see, e.g., Brown v. Metropolitan Sch. Dist. of Lawrence Township*, 945 F.Supp. 1202, 1206 (S.D.Ind.1996), the Seventh Circuit recently announced that exhaustion is not a jurisdictional defense because it is generally waivable. *Charlie F.*, 98 F.3d 989 (7th Cir. 1996). Therefore, I will treat the current motion as a motion to dismiss under Rule 12(b)(6). *See Frith v. Galeton Area Sch. Dist.*, 900 F.Supp. 706, 711 (M.D.Pa.1995) (stating that exhaustion may properly be considered under Rule 12(b)(6)).

4. The fact that plaintiff seeks monetary relief which is not available under the IDEA is irrelevant; all eligible claims must first be brought under the administrative regime before moving to federal court. *Charlie F.*, 98 F.3d at 992.

officials under § 1983, the Rehabilitation Act and the Americans With Disabilities Act regarding a misconceived educational strategy under was required to exhaust IDEA administrative remedies) Therefore, the fact that plaintiff here asserted Constitutional claims under § 1983 does not alter his obligation to exhaust the administrative process before suing in federal court.

■ In a final attempt to save these claims, plaintiff argues that he did not have to exhaust the administrative process because doing so would have been futile. A plaintiff need not exhaust administrative procedures if he can show that doing so would have been futile or inadequate. *Honig v. Doe,* 484 U.S. 305, 327, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988). Some courts have allowed suits to proceed without exhaustion only in exceptional circumstances. *See Urban v. Jefferson County Sch. Dist. R–1,* 89 F.3d 720, 725 (10th Cir.1996) (stating that administrative remedies "futile" when plaintiffs allege a systemic failure and seek systemwide reforms); *Heldman v. Sobol,* 962 F.2d 148, 159 (2d Cir.1992) (finding "futility" where plaintiff alleged that state education department procedures violated federal law, and the administrative system lacked power to change them). Enforcing a slightly more lenient standard, other courts have allowed plaintiffs to bypass the exhaustion requirement in cases where school officials repeatedly violated procedural safeguards or were unresponsive to parents' requests for help. *See, e.g., Kerr Center Parents Ass'n v. Charles,* 897 F.2d 1463 (9th Cir.1990) (no exhaustion required where the school district refused parents' request for a due process hearing); *Mason v. Schenectady City Sch. Dist.,* 879 F.Supp. 215, 218–19 (N.D.N.Y. 1993) (excusing plaintiff's failure to exhaust

administrative remedies where "the School District persistently failed to inform her of her due process rights over a period of years."); *cf. Stauffer v. William Penn Sch. Dist.,* 829 F.Supp. 742, 749 (E.D.Pa.1993) (requiring exhaustion where plaintiff failed to request a due process hearing or pursue other administrative remedies and where school district was responsive to mother's requests for help)

Here, plaintiff specifically claims that the administrative process would have been futile because: (1) it did not occur; (2) school officials reclassified plaintiff's LD status without notifying his parents; and (3) school officials suspended plaintiff for four months without due process prior to expelling him.[5] Responding to plaintiff's arguments in turn, I find first that, to the extent the administrative process did not occur, it was because plaintiff failed to complain or request a hearing.[6] Second, plaintiff implies that school officials failed to notify him or his parents prior to reclassifying his LD status ("Bills was somehow suddenly recharacterized as one who was not learning disabled"). But assuming, arguendo, that plaintiff did not receive prior notice, this alone is insufficient to prove that the administrative process would be futile.

In contrast with these arguments, plaintiff's allegations in his complaint indicate that, for the most part, the School District was responsive to his parents' requests and provided them with prior notice and an opportunity to be heard regarding the steps they took to suspend and expel. First, the Homer School District Superintendent, Ed Karns, notified plaintiff's parents in early February 1996 that the district intended to suspend plaintiff and recommend his expulsion. Shortly thereafter, plaintiff received

---

**5.** This allegation does not mesh with the facts in plaintiff's state and federal complaints. In the state complaint, plaintiff alleged that the school district suspended him for ten days in the 1995–96 school year before deciding whether to expel him. State Compl. at ¶ 21. In his federal complaint, plaintiff failed to describe the duration of his suspension.

**6.** The IDEA provides for complaints to be reviewed at an impartial due process hearing conducted by a local educational agency. 20 U.S.C.

§ 1415(b)(2). Here, when plaintiff's parents requested a hearing on February 20, school officials scheduled one. The record does not provide enough information to determine whether this hearing constituted a "due process" hearing under the IDEA and relevant Illinois law. See 105 ILCS 5/14–8.02(g). If it was, then plaintiff should have appealed the decision to the State Board of Education pursuant to 105 ILCS 5/14–8.02(h). If it was not, then plaintiff should have requested a due process hearing.

formal notice of this intent by a letter from the school district that arrived at his house on February 13, 1996. Then, pursuant to plaintiff's parents' request, the school district held a suspension/expulsion review hearing on May 7, 1996. Plaintiff did not pursue further administrative remedies. Where this evidence shows that the school district apprised plaintiff of its actions and responded to his parents' request for a hearing, it would be unreasonable to conclude that it would be futile for plaintiff to exhaust the administrative process. Consequently, I conclude that Counts II, III, V and VI of the complaint assert IDEA type claims and that plaintiff's failure to exhaust the state administrative process necessitates a dismissal of these claims now.

### B. Qualified Immunity

At this point, only Counts I and IV remain. In Count I, plaintiff alleges 42 U.S.C. § 1983 claims against Jolas and Kamarauskas, in their individual capacities, claiming that they violated his Fourth, Fifth and Sixth Amendment rights. Defendants move to dismiss Count I against Jolas by asserting a qualified immunity defense.

 Qualified immunity is a defense available to government officials under certain conditions. "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Nabozny v. Podlesny,* 92 F.3d 446, 455 (7th Cir.1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). Thus, the threshold inquiry regarding the qualified immunity defense here is: did plaintiff allege that Jolas violated any of his statutory or constitutional rights?

 Plaintiff here alleged in very general terms that Jolas interrogated plaintiff daily, that the interrogations were often "threatening and intimidating and were unnecessary

and unreasonable ... in violation of Bill's Fourth, Fifth (*Miranda*) and Sixth Amendment rights." [7] Although plaintiff did not clearly articulate his claims, his allegations imply several specific violations. First, plaintiff impliedly claims that Jolas seized him in violation of the Fourth Amendment. Under the Fourth Amendment, students at public schools have reduced, but still protected, liberty interests. *Wallace v. Batavia School Dist.,* 68 F.3d 1010, 1014 (7th Cir. 1995). School officials may search or seize students only where it is reasonable to do so under the circumstances. *Id.,* 68 F.3d at 1012, 1014. Although plaintiff's factual allegations are scant in this regard, I conclude that his assertions that Jolas repeatedly pulled him out of class and interrogated him on a daily basis for at least five days and continued to interrogate him after another boy admitted starting the fire at Schilling school sufficiently allege a degree of unreasonableness to withstand a motion to dismiss.

 Second, plaintiff's allegations imply that Jolas failed to advise him of his *Miranda* right to remain silent in violation of the Fifth Amendment. "[T]he safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest.'" *Berkemer v. McCarty,* 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984) (citation omitted). The test is whether, during the interview, a reasonable twelve year old would have understood himself to be "subjected to restraints comparable to those associated with formal arrest." *Id.* at 441, 104 S.Ct. at 3151. Setting aside the issue (which plaintiff does not address) of whether a school principal should be required to advise a student of his *Miranda* rights, his claim fails in other respects. Primarily, plaintiff failed to offer evidence to suggest that Jolas was involved in restraining him. In addition, plaintiff admitted that his mother was present at several of the interviews, and this tends to negate an inference that plaintiff felt as if he were under arrest. "To state a claim for personal liability under

---

7. I acknowledge that plaintiff stated more specific allegations pertaining to Kamarauskas, but those claims are not subjects of this motion.

§ 1983, a plaintiff must allege that defendants were personally involved in the deprivation of his constitutional rights." *McMurry v. Sheahan,* 1996 WL 296585, *3 (N.D.Ill. May 31, 1996) (citing *Whitford v. Boglino,* 63 F.3d 527, 530–31 (7th Cir.1995)). By not establishing a nexus between Jolas and the allegedly restrictive situations plaintiff experienced, he fails to show that Jolas deprived him of his Fifth Amendment rights or to state an individual capacity claim against Jolas on this basis.

■ Third, plaintiff impliedly alleges that Jolas violated his Sixth Amendment right to counsel. The right to counsel attaches only at or after the initiation of adversarial proceedings (i.e. formal charge, preliminary hearing, indictment, information, or arraignment). *United States v. Jungels,* 910 F.2d 1501, 1505 (7th Cir.1990) (citation omitted). Here, there is no claim or evidence that adversarial proceedings had been initiated against plaintiff. Therefore, the right to counsel did not attach, and there is no Sixth Amendment violation. In the end, plaintiff's claims against Jolas for a violation of his Fifth and Sixth Amendment rights are dismissed for failure to state a claim.

## C. Res Judicata, Abstention and Punitive Damages

At this point, the following claims remain: (1) a Fourth Amendment claim against Jolas in his individual capacity; (2) Count I against Kamarauskas; and (3) Count IV against Kamarauskas. Defendants do not move for dismissal of any of the claims against Kamarauskas, so these shall remain a part of this action. Defendants assert several alternative grounds for dismissal that do not need to be analyzed fully in light of my decision to dismiss most of plaintiff's claims on other grounds. However, I will narrowly examine defendants' two other arguments for dismissal to determine whether either of them knock out the last remaining claim against Jolas.

■ Defendants argue for dismissal of the entire complaint against the School District Defendants based on the doctrine of res judicata.[8] The doctrine of res judicata provides that a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.,* 172 Ill.2d 325, 334, 665 N.E.2d 1199, 1204, 216 Ill.Dec. 642, 647 (1996). The effect of a state court judgment in federal court depends upon state law of res judicata. *McNealy v. Caterpillar Inc.,* 1997 WL 7564, at *3 (N.D.Ill. Jan.1, 1997) (citing *Rekhi v. Wildwood Indus., Inc.,* 61 F.3d 1313, 1317 (7th Cir.1995)). Under Illinois law, an action is barred by res judicata when there is: (1) an identity of parties or privies; (2) an identity of cause of action; and (3) a final judgment on the merits rendered by a court of competent jurisdiction. *McNealy,* 1997 WL 7564, at *3 (citing *Retired Chicago Police Ass'n v. City of Chicago,* 7 F.3d 584, 591 (7th Cir.1993) (citations omitted)).

■ An initially obvious problem for defendants here is that Jolas was not a party in the state action, and thus he must qualify as a "privy" if res judicata has any chance of applying here. Is Jolas in privity with any party in the state action? In state court, plaintiff sued seven Homer School District Board of Education members in their official capacities. Where official capacity suits against government officials are actually against their government employer, *see, e.g., Edwards v. City of Quincy,* 124 Ill.App.3d 1004, 80 Ill.Dec. 142, 146, 464 N.E.2d 1125, 1129 (1994), the true defendant in plaintiff's state suit was the School District Board of Education. Here, plaintiff sued Jolas in his individual capacity. Thus, Jolas, and not the School District, is the actual party. The general rule is that government employees sued in their individual capacities are not in privity with their government employer. *Beard v. O'Neal,* 728 F.2d 894, 897 (7th Cir.1984). Consequently, Jolas, in his individual capacity, is not in privity with the School Board that plaintiff sued in state

---

8. I declined to conduct the thorny res judicata analysis with respect to the entire complaint because the IDEA's effect upon most of plaintiff's claims rendered it superfluous. However, without ruling on this issue, I remark that res judicata appears to provide an alternative viable basis for dismissing some of plaintiff's claims.

court. Defendants fail to address this point, and so I now conclude that res judicata does not bar this specific claim against Jolas.

■ Alternatively, defendants argue that federal court abstention is appropriate under *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention is proper under certain exceptional circumstances based on considerations of "[w]ise judicial administration." *Starzenski v. City of Elkhart,* 87 F.3d 872, 878 (7th Cir.1996). Defendants fail to cite any exceptional circumstances advocating application of this doctrine, and besides, Jolas was never part of the allegedly ongoing state action. Therefore, I find that abstention is not proper here.

■ Finally, defendants move to dismiss or, in the alternative, strike plaintiff's request for exemplary and punitive damages. Plaintiff contends that this request only pertains to the defendants sued in their individual capacities. The only such claim still remaining now is against Jolas for a violation of plaintiff's Fourth Amendment rights. Punitive damages are available in a § 1983 action when the defendant's conduct is shown to be motivated by evil motive or when it involves reckless or callous disregard to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Defendants argue that plaintiff failed to allege recklessness or evil motive sufficient to sustain this claim. Here, where plaintiff alleged that Jolas engaged in abusive, threatening, and intimidating daily interrogations of plaintiff, I conclude that he satisfied the lenient pleading standard to withstand a motion to dismiss.[9]

### CONCLUSION

Pursuant to the foregoing analysis, I conclude that Counts II, III, V, and VI are hereby dismissed for failure to exhaust administrative remedies. Under Count I, plaintiff's claims that Jolas violated his Fifth and Sixth Amendment rights are dismissed.

As a result, Count I against Jolas, in his individual capacity, alleging a violation of plaintiff's Fourth Amendment rights survives this motion, as do Counts I and IV to the extent they assert claims against Kamarauskas. In sum, defendant's Motion to Dismiss is hereby GRANTED in part, and DENIED in part.

---

**9.** Note, however, that these allegations would almost certainly lack specificity sufficient to

withstand a motion for summary judgment.