Robert BILLS, as Minor by his parents, and next best friends, Sean BILLS and Debbie Bills, Plaintiff,

v.

HOMER CONSOLIDATED SCHOOL DISTRICT NUMBER 33–C, a Municipal corporation, Douglas Sisterson, Individually and in his official capacity, and Deputy Joseph Kamarauskas, Individually and in his official capacity, Defendants.

No. 96 C 6431.

United States District Court,
N.D. Illinois,
Eastern Division.

July 1, 1997.

Edward M. Fox, Alan J. Shefler, Shefler and Berger, Ltd., Chicago, IL, for plaintiff.

Heidi Ann Katz, Robert E. Riley, Laura Manzi Sinars, Nicholas Evans Sakellariou, Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., Chicago, IL, for Homer Consolidated School Dist. No. 33-C, Douglas Sisterson, Ernst Jolas.

Norma Jean Guess, Daniel C. Shapiro, Moss & Bloomberg, Ltd., Bolingbrook, IL, James Gus Sotos, Dana M. Shannon, Jason W. Rose, James Constantine Vlahakis, Hervas, Sotos & Condon, P.C., Itasca, IL, for Joseph Kamarauskas.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

On February 5, 1996 school officials found a fire burning in a locker at Schilling Elementary School in the Homer Consolidated School District No. 33–C, where plaintiff Robert Bills was a fifth grade student. Beginning on that day and continuing daily through February 9, defendant Joseph Kamarauskas, a Will County police officer, and Schilling school officials questioned Bills in connection with the fire. On February 8, 1996, another Schilling School student admitted to starting the fire with matches. Then on February 9, Kamarauskas questioned plaintiff again and extracted a signed confession wherein plaintiff admitted to bringing a propane torch to school and giving it to the student who admitted starting the fire.

At a school disciplinary hearing on May 7, 1996 the School District's Board of Education took action to expel plaintiff from school. Subsequently, Bills filed a complaint in Illinois state court alleging constitutional deprivations under 42 U.S.C. § 1983. The court found, *inter alia*, that the school board abused its discretion by expelling plaintiff from May 8, 1996 through the end of the 1996–1997 school year. Bills resumed school, and continues to attend at the present time.

Bills filed this action against the School District, Douglas Sisterson (President of the Board of Education for the Homer District), Principal Ernst Jolas, and Deputy Joseph Kamarauskas alleging claims under 42 U.S.C. § 1983 and seeking monetary, declaratory, and injunctive relief. I dismissed four of the six counts asserted in the complaint pursuant to an earlier motion to dismiss. *See Bills v. Homer Consolidated School Dist.*, 959 F.Supp. 507 (N.D.Ill.1997). Now, Kamarauskas moves for Judgment on the Pleadings on the claims asserted against him in Counts I and IV of the complaint.

## DISCUSSION

A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993). Accordingly, the motion should only be granted if it appears beyond a doubt that the plaintiff cannot prove any facts that would support his claim for relief. *See Frey v. Bank One*, 91 F.3d 45, 46 (7th Cir.1996). The court must view all facts set forth in the complaint in the light most favorable to the nonmoving party. *Rooding v. Peters*, 92 F.3d 578, 579 (7th Cir.1996).

## COUNT I: Fourth, Fifth and Sixth Amendment Claims

In Count I, plaintiff alleges a 42 U.S.C. § 1983 claim against Kamarauskas in his individual capacity for violations of his Fourth, Fifth and Sixth Amendment rights. These amendments apply to the states through the Fourteenth Amendment. *See Gary v. Sheahan*, 1997 WL 201590, at *5 (N.D.Ill. Apr.18, 1997).

### Fourth Amendment

Plaintiff asserts that Kamarauskas violated his Fourth Amendment right by repeatedly seizing him from class and interrogating him on a daily basis for five days. Kamarauskas concedes that he seized plaintiff but contends that the seizures were reasonable. Kamarauskas further asserts that even if plaintiff adequately stated a Fourth Amendment claim it should be dismissed because he is entitled to qualified immunity.

Under the Fourth Amendment, students at public schools have reduced, but still protected, liberty interests. *Wallace v. Batavia School Dist.*, 68 F.3d 1010, 1014 (7th Cir.1995). It is well established that students do not surrender their constitutional rights at the schoolhouse gates. *Tinker v.*

*Des Moines Indep. Community Sch. Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969). But the law that compels students to attend school deprives them of some freedom, and once at school students are subject to the control of teachers and administrators. *Batavia,* 68 F.3d at 1013. On the specific issue of Fourth Amendment rights at school, the Seventh Circuit recently held that teachers violate the Fourth Amendment only when the restriction of a student's liberty is unreasonable under then existing and apparent circumstances. *Id.* at 1014. Ordinarily, police officers must have probable cause to seize a person without violating the Fourth Amendment. Although it is not certain what standard applies to a police officer conducting a seizure in connection with school officials, *New Jersey v. T.L.O.,* 469 U.S. 325, 342 n. 7, 105 S.Ct. 733, 743 n. 7, 83 L.Ed.2d 720 (1985), existing law demonstrates that the standard lies somewhere within the spectrum defined by probable cause at one end and reasonableness under the circumstances at the other.

■ Under the qualified immunity doctrine "[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Nabozny v. Podlesny,* 92 F.3d 446, 455 (7th Cir.1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To overcome the qualified immunity defense, plaintiff must show that: (1) the alleged conduct sets out a constitutional violation; and (2) the constitutional standards were clearly established at the time of the violation. *Young v. Murphy,* 90 F.3d 1225, 1234 (7th Cir.1996) (citation omitted).

■ Here, the Fourth Amendment and qualified immunity issues are entwined. Once an officer's conduct has been deemed objectively unreasonable for Fourth Amendment purposes it resolves for immunity purposes whether a reasonable officer could have believed that his conduct was lawful.[1] *Lanigan v. Village of E. Hazel Crest, Illinois,* 110 F.3d 467 (7th Cir.1997).

■ Does the conduct alleged in the complaint set out a Fourth Amendment violation? Under the notice pleading standard in Rule 8(a) of the Federal Rules of Civil Procedure, plaintiff has alleged sufficient facts to indicate that his Fourth Amendment right to be free from unreasonable seizures was violated. Specifically, plaintiff alleged that Kamarauskas repeatedly pulled him out of class and questioned him for a full week beginning Monday February 5, 1996 and continuing through Friday February 9, 1996. I am concerned for the most part with plaintiff's allegation that Kamarauskas seized him on February 9, 1996 even though another student confessed a day earlier to starting the fire. Defendant does not offer a reason to explain his conduct.

Likewise, the slightly more specific qualified immunity inquiry as to "whether a reasonable police officer could have believed [Kamarauskas'] conduct was constitutional 'in light of clearly established law and the information [he] possessed' at the time," *Frazell v. Flanigan,* 102 F.3d 877, 886 (7th Cir.1996) (citing *Anderson v. Creighton,* 483 U.S. 635, 639, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)), is unclear at this time. Plaintiff must either prove that defendant's actions violated a clearly established constitutional right by presenting analogous caselaw informing the right to be free from repeated seizures at school after a fire has occurred or show that the search was so plainly unreasonable that Kamarauskas would have been on notice as to the illegality of his actions. *See Lanigan,* 110 F.3d at 476. Plaintiff has not cited a case establishing the former proposition nor alleged enough facts to conclusively establish the latter.[2] When the factual

---

1. I explicitly set aside for now the question as to what specific level of suspicion is required for a seizure by a police officer acting in connection with school officials, and find it unnecessary to resolve for the reasons set forth below.

2. Even though the lack of clear precedent regarding the standard for a police seizure of a student suggests that qualified immunity would be proper here, I am leaving this issue for later to afford plaintiff an opportunity to show facts

record is more developed it should become possible to judge the reasonableness of Kamarauskas' conduct, and dismissal now would be premature.

### Fifth Amendment

██ Plaintiff also contends that Kamarauskas failed to advise him of his *Miranda* right to remain silent, obtained an involuntary confession and used it against him in a quasi-criminal proceeding in violation of the Fifth Amendment. The *Miranda* warnings are not constitutionally mandated, rather they are prophylactic measures to encourage respect for the Fifth Amendment right against compulsory self-incrimination. *Davis v. United States,* 512 U.S. 452, 457, 114 S.Ct. 2350, 2354, 129 L.Ed.2d 362 (1994). The Seventh Circuit has held that there is no constitutional violation unless an improperly obtained confession is actually introduced in a criminal proceeding. *Mahoney v. Kesery,* 976 F.2d 1054, 1061–62 (7th Cir.1992); *Wilkins v. May,* 872 F.2d 190, 194 (7th Cir.1989) ("The Fifth Amendment does not forbid the forcible extraction of information but only the use of information so extracted as evidence in a criminal case—otherwise immunity statutes would be unconstitutional."); *see also Weaver v. Brenner,* 40 F.3d 527, 534–35 (2d Cir.1994). *But see Cooper v. Dupnik,* 963 F.2d 1220, 1245 (9th Cir.1992) (holding that a due process violation is complete with the coercive behavior itself even if the admissions are never used in court).

██ Here, plaintiff contends that his Fifth Amendment right was violated because Kamarauskas obtained a confession from Bills without informing him of his *Miranda* rights and introduced it at the school expulsion hearing, a proceeding defendant characterizes as quasi-criminal. "[A] 'criminal case' for purposes of the invocation of the Fifth Amendment privilege, is one which may result in sanctions being imposed upon a person as a result of his conduct being adjudged violative of the criminal law." *In re Daley,* 549 F.2d 469, 474 (7th Cir.1977). In one of the few cases in this circuit to deal with the issue of whether a proceeding implicates the Fifth Amendment self-incrimination clause

the *In re Daley* court found that state bar disciplinary proceedings did not. The underlying rationale for this decision was that the essence of state bar disciplinary proceedings is to decide the moral fitness of an attorney to continue in practice, not to decide the criminality of a person's conduct. *Id.* I am inclined to conclude here that the essence of school expulsion hearings is to decide a student's fitness to remain in school which does not implicate the right against self-incrimination, not to decide the criminality of a student's acts. However, I need not resolve this issue because the very presence of uncertainty as to whether Kamarauskas' alleged use of an un-*mirandized* confession at plaintiff's expulsion hearing violates the Fifth Amendment, means that he is entitled to qualified immunity for these acts.

### Sixth Amendment

██ Plaintiff also alleges that Kamarauskas violated his Sixth Amendment right to counsel. The right to counsel attaches only at or after the initiation of adversarial proceedings (i.e. formal charge, preliminary hearing, indictment, information, or arraignment). *United States v. Jungels,* 910 F.2d 1501, 1505 (7th Cir.1990) (citation omitted). Here, there is no claim or evidence that adversarial proceedings had been initiated against plaintiff at the time of his interrogation. Therefore, the right to counsel did not attach, and there is no Sixth Amendment violation.

### Official Capacity Claim

██ In Count IV of his complaint, plaintiff asserts a claim against Kamarauskas in his official capacity for maintaining a policy that violated plaintiff's Fourth Amendment rights by subjecting him to unreasonable seizures and interrogations. "An official capacity suit against a municipal official is merely another way of asserting a claim against the municipality." *Gibson v. City of Chicago,* 910 F.2d 1510, 1519 n. 14 (7th Cir. 1990). A municipality, however, may not be held liable under § 1983 on a theory of respondeat superior. *Monell v. Department of*

indicating a degree of unreasonableness that would preclude immunity.

**1068**

*Social Services of City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). "Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. at 2037. Plaintiffs asserting claims against a municipality need only comply with the conventional standards of notice pleading and are not required to meet any heightened pleading standard. *Sledd v. Linsday,* 102 F.3d 282, 288 (7th Cir.1996). Nevertheless, boilerplate allegations of a municipal policy entirely lacking in factual support are insufficient to state a claim. *Sivard v. Pulaski County,* 17 F.3d 185, 188 (1994).

 Here, plaintiff's complaint describes the allegedly offending policy as follows

> policies and customs include . . . the deliberately indifference [sic] training and/or customs of officers in interrogating students in violation of school policies, in the absence of parents, and seizing and interrogating students without legal cause and in an unreasonably threatening manner in violation of the Miranda rights.

Cmplt. at ¶ 44. These allegations rehash and restate the alleged experiences of plaintiff in a general manner. But they do not contain specific facts suggesting that the police have treated any other students in the same manner. In other words, plaintiff's claim fails to allege facts showing a pattern of constitutional violations that would have put the municipality on notice that its employees' responses to recurring situations were insufficient to protect constitutional rights. *See Cornfield by Lewis v. Consolidated High School District No.* 230, 991 F.2d 1316, 1327 (7th Cir. 1993). I conclude that Count IV of plaintiff's complaint amounts to nothing more than "boilerplate allegations" of a municipal policy and is, as a result, insufficient to state a claim.

In sum, judgment on the pleadings is granted with respect to the Fifth and Sixth Amendment claims alleged in Count I and to the official capacity claim alleged in Count IV. The Fourth Amendment claim remains.

*Conclusion*

Defendant's motion for judgment on the pleadings is GRANTED in part and DENIED in part.