Luke MASON, by and through
Sandra MASON, Plaintiff,

v.

SCHENECTADY CITY SCHOOL DIS-
TRICT, Joseph Giambo, Director, Pupil
Services and Special Education, in his
Individually and Official Capacities and
Dr. Steven Benson, Chairperson, Second-
ary Special Education, in his Individual
and Official Capacities, Defendants.

No. 92–CV–1079.

United States District Court,
N.D. New York.

Sept. 21, 1993.

Disability Advocates, Inc., Albany, NY (Cailie Currin, of counsel), for plaintiff.

Roemer and Featherstonhaugh, P.C., Albany, NY (Claudia A. Ryan, Rosemarie Riddell, of counsel), for defendants.

### MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Luke Mason, a developmentally disabled seventeen year old resident of the Schenectady City School District (the School District), complains about the School District's failure to provide free appropriate public education tailored to his specific needs, as various state and federal laws require.

By and through his mother, he sues the School District, Joseph Giambo (its director of Pupil Services and Special Education), and Dr. Steven Benson (Chairperson the School District's Secondary Special Education), alleging violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the due process and equal protection clauses of the U.S. Constitution, and several provisions of New York's Education Law. N.Y.Educ.Law § 4401 *et seq.* He sues the individual defendants both in their individual and official capacities.

Defendants now move for summary judgment; plaintiffs oppose the motion on the ground that they need further discovery or, in the alternative, on the ground that defendants are not entitled to judgment as a matter of law. The Court rejects the discovery argument because, as Magistrate Judge Hurd has found, the discovery deadline has passed without a satisfactory explanation for the plaintiffs' untimely discovery requests. Moreover, further discovery is not necessary to decide this motion for summary judgment. As Magistrate Judge Hurd acknowledged in his letter to the parties, he and the parties may revisit the question of discovery after the Court renders its decision on the present motion.

### Background

Early in Luke's life, health specialists at the Eleanor Roosevelt Developmental Services (ERDS) diagnosed him has having "Minimal.Brain Dysfunction." As a result of this diagnosis, he enrolled in the Early Childhood Program at ERDS when he was two years of age.

Between the ages of three and eleven, Luke was enrolled in the day treatment program at another facility, St. Catherine's Cen-

ter for Children in Albany, New York.[1] At age eleven, St. Catherine's discharged Luke and the School District placed him at the Wildwood School, another facility for children with assorted disabilities.

Thereafter, Luke began exhibiting increasingly aggressive behavior. The complaint reveals an unhappy history in which Luke was referred in and out of various social service agencies and programs, including the Wildwood School, the Capital District Psychiatric Center (CDPC), the Schenectady County Family Court, the Tryon Detention Center of the Division for Youth, the Parsons day treatment program, the Board of Cooperative Educational Services (BOCES), and the School District's Steinmetz Academic Adjustment Program.

The gist of the complaint is that the School District failed to find an appropriate placement for Luke, given his disabilities, and failed to advise Luke and his mother of their rights to challenge the placements and programs that the School District's CSE prescribed for him. These placements included a program at Wildwood School, home tutoring, and attempts at placing Luke with BOCES, Parsons, and Steinmetz programs.[2]

Luke was in and out of the CDPC Inpatient programs, and he spent some time in the custody of the Division for Youth at its Tryon Detention Facility. It appears that the Schenectady County Family Court committed him to the custody of the Division for Youth, which placed him in the Tryon Detention Facility where he remained from November 2, 1988 at least until October, 1989. *See* Complaint at ¶¶ 27–33.

Because of Luke's aggressive behavior, his mother petitioned the Schenectady County Family Court to designate Luke as a "person in need of supervision" or "PINS." The Family Court admitted Luke to the CDPC for evaluation and the CDPC recommended that Luke be placed again in the custody of the Division for Youth. Luke again found himself in the custody of the Division, this time until April, 1992 when (at 16 years of

age) he was remanded to his mother's custody, returning to the School District on May 1, 1992.

The School District's CSE held a meeting on May 7, 1992 to discuss Luke's options for educational placement. Luke's mother, an attorney from Disability Advocates, Inc., defendant Steven Benson, another School District administrator, and Luke's caseworker attended the meeting. Luke joined them toward the end of the meeting. Plaintiffs complain that the defendants were ill-prepared for this meeting, having "little to offer in the way of programs or services" for Luke. According to the complaint, "the meeting ended with a renewed request by plaintiff's attorney for an evaluation as the first step towards determining a proper educational placement for Luke." Complaint at ¶¶ 49–53.

Apparently on June 2, 1992, plaintiff's counsel requested an impartial hearing with respect to Luke's educational prospects. By letter dated June 10, 1992, defendant Joseph A. Giambo denied the request for a hearing as "premature" because the CSE had not made a formal recommendation for Luke's placement. *See* Letter from Joseph A. Giambo to Cailie Currin, Esq. dated June 10, 1992 (attached to Complaint as Exh. A). According to Mr. Giambo's letter, the CSE was awaiting Luke's and his mother's response to placement in some program that the parties discussed at the May 7, 1992 meeting. In effect, Mr. Giambo reported that the CSE was awaiting word from the Masons before making a recommendation. Mr. Giambo advised the Masons that they would be free to seek review of that recommendation, if they found it unacceptable.

As a result of the foregoing, Luke and his mother filed the complaint in this action on August 19, 1992, alleging that the defendants:

    (1) failed to provide adequate individualized programs and services, and failed to

---

1. At the age of six, because he exhibited "firesetting behaviors, he spent a brief period in St. Catherine's residential program."

2. It appears that some of these programs refused to accept Luke because of his history of aggressive behavior.

observe the procedural protections that the IDEA requires;

(2) discriminated against Luke on the basis of his disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*;

(3) discriminated against Luke on the basis of his disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794;

(4) deprived Luke of the right to an education in violation of the due process clause;

(5) deprived him of the equal protection of the laws by failing to place Luke in the least restrictive environment consistent with his treatment and educational needs;

(6) deprived him of the foregoing federal rights under color of state law;

(7) breached their duties under New York State Education Law, specifically N.Y.Educ.Law § 4401 *et seq.*

For relief, Luke and his mother seek declarations establishing various violations of federal law, judgment entitling Luke to compensatory education, compensatory and punitive damages, and attorneys fees.

In September, 1992, after the Masons filed their complaint in this action, the School District placed Luke in the School District's "Cities In School Academy." The Masons have not sought administrative review of this placement. According to defense counsel's affidavit, the School District is still saving Luke a place in the program it recommended in September of last year.

### The School District's Motion for Summary Judgment

Defendants bring the present motion for summary judgment on the following grounds: (1) plaintiffs have not exhausted their administrative remedies; (2) mootness; (3) statute of limitations; (4) punitive damages are not available as a matter of law against the School District; (5) the individual defendants enjoy qualified immunity; (6) plaintiffs have not alleged a policy or custom sufficient to state a cause of action against the municipal defendant.

### (1) EXHAUSTION

█ The principal statutory basis for the Masons' action is the IDEA, 20 U.S.C. § 1401 *et seq.* This is the statute that conferred upon them the rights that, they allege, the School District violated. In that statute, Congress expressly included an exhaustion requirement, and the requirement extends also to actions under the Constitution, the Rehabilitation Act of 1973, and related laws. Specifically, the IDEA provides:

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C. § 790 *et seq.*], or other federal statutes protecting the rights of children and youth with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this part, the procedures under subsections (b)(2) and (c) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(f). Courts, however, do not invariably require exhaustion of administrative remedies under the IDEA. *See Honig v. Doe,* 484 U.S. 305, 326–27, 108 S.Ct. 592, 605–06, 98 L.Ed.2d 686 (1988). The Second Circuit, for example, has adopted a "flexible approach" to the exhaustion requirement, excusing a parent's failure to exhaust administrative remedies if resort to the administrative process is futile, the agency has adopted a policy or practice of general applicability that is contrary to law, or it is improbable that adequate relief is available in the administrative forum. *See Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987); *Quackenbush v. Johnson City School Dist.,* 716 F.2d 141, 147–48 (2d Cir.1983), *cert. denied,* 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984).

The Court rejects the defendants' exhaustion argument in the present case because Ms. Mason, like the plaintiff in *Quackenbush,* claims that the School District "deprived her of the opportunity to take advantage of the procedural safeguards offered by the statute." *Quackenbush,* 716 F.2d at 147; *see Buffolino v. Board of Educ. of Sachem Cent.*

*School Dist.,* 729 F.Supp. 240 (E.D.N.Y.1990) (court would excuse failure to exhaust if the school district somehow deprived parents of their right to proper notice and a hearing). Here, throughout her affidavit in opposition to the present motion Ms. Mason plainly states that the School District persistently failed to inform her (and other parents) of the procedural protections as the IDEA requires. *See* 20 U.S.C. § 1415(b) (requiring school districts to adopt policy to ensure that parents have notice of "all procedures available pursuant to this section"); *see also* Aff. of Sandra Mason at ¶¶ 9, 15, 17, 18, 22, 25, 28, 33, 37, 50, 54, 56, 58, 60, 62, 64, 67, 89, 90.

Accordingly, with respect to many of the School District's decisions regarding Luke's placement, Ms. Mason has offered a reason for not exhausting or even pursuing her administrative remedies. Viewing the record as a whole, including Ms. Mason's claim that the School District persistently failed to inform her of her due process rights over a period of years, and drawing inferences in plaintiffs' favor, the Court should permit this civil action to continue. Summary judgment dismissing her action on exhaustion grounds is, therefore, not warranted.

## (2) MOOTNESS

■ Defendants further contend that summary judgment is appropriate because the case is moot. They argue that at least as of September, 1992, neither Luke nor his mother complained of Luke's placement in the School District's "Cities In School Academy," Luke's most recent placement. From the affidavits of Sandra and Luke Mason submitted in opposition to the present motion, it appear that they are both unhappy with the placement. According to the opposing affidavits, Luke dropped out of the program in November, 1992 and went to live with his brother in Virginia because the program was unsatisfactory. He returned to Schenectady in December, 1992, but attended school sporadically (six times) between then and January, 1993. He has not attended since then, and has expressed a desire to work and pursue a GED program instead. Thus, notwithstanding defense counsel's representa-

tion, a controversy still surrounds Luke's most recent placement.

Moreover, the action seeks a "compensatory education," a declaratory judgment, and damages for the School District's failure to comply with the requirements of the IDEA and other federal statutes. The demand for "compensatory education" refers to a remedy for the deprivation of a "free appropriate public education" as the statute requires. *See* 20 U.S.C. § 1412(2)(B); *Burr v. Ambach,* 863 F.2d 1071, 1078 (2d Cir.1988) (approving an award of compensatory education), *vacated on other grounds,* 492 U.S. 902, 109 S.Ct. 3209, 106 L.Ed.2d 560 (1989), *reaff'd on reconsideration sub nom. Burr v. Sobol,* 888 F.2d 258 (1989), *cert. denied,* 494 U.S. 1005, 110 S.Ct. 1298, 108 L.Ed.2d 475 (1990). Thus, even if the Masons were satisfied with Luke's present placement, the demand for compensation to correct past wrongs would remain very much alive. This case is not moot.

## (3) STATUTE OF LIMITATIONS

■ Next, defendants seek summary judgment on the ground that this action is untimely under the applicable statute of limitations, which they claim is four months. Because the IDEA contains no statute of limitations, courts look to the most analogous state limitations statute to determine an appropriate limitations period.

■ Defendants argue that most of the claims are barred by a four month statute of limitations governing actions under the IDEA. In support of their statute of limitations argument, the defendants cite *Adler v. Education Dep't of New York,* 760 F.2d 454 (2d Cir.1985), wherein the Second Circuit affirmed Judge Gagliardi's conclusion that a four month statute of limitations applies to actions under 20 U.S.C. § 1415 because such actions resemble Article 78 proceedings under New York's Civil Practice Law and Rules (CPLR).

*Adler,* unlike the present case, involved an appeal to the district court following plaintiff's resort to administrative remedies. Judge Gagliardi had before him the administrative record of the Commissioner of Edu-

cation. The Second Circuit applied the four month limitations period governing Article 78 review, reasoning that an appeal to the district court from an administrator's decision was analogous to Article 78 review.

The Masons case, however, relies upon a theory that differs significantly from a simple appeal from an adverse administrative decision.[3] The courts in *Adler* were called upon to review—and had the benefit of—an administrative record. The action in *Adler* indeed resembled an administrative appeal like that available under Article 78 of the CPLR.

The Masons' case, however, is different. As noted above, the Masons contend that the School District's failure to observe the procedural protections of the IDEA resulted in Luke's present educational deficiencies. Because the Masons resorted to the judicial process without first pursuing administrative remedies, the Court has no administrative record before it. In fact, the Masons case is more analogous to an action "to recover upon a liability, penalty or forfeiture created or imposed by statute" which, under CPLR § 214[2] carries a three year limitation period. *See Robert D. v. Sobel,* 688 F.Supp. 861, 864 (S.D.N.Y.1988) (request for attorneys fees under 20 U.S.C. § 1415 governed by three year limitations period notwithstanding *Adler*). This construction of the present complaint justifies and comports with plaintiffs' invocation of 42 U.S.C. § 1983, a statute that carries a three-year limitations period in New York.

The Second Circuit itself acknowledged that Section 1983 is available to remedy deprivations of procedural rights guaranteed by the predecessor to the IDEA. *See Quackenbush,* 716 F.2d at 147–48; *see also Gerasimou v. Ambach,* 636 F.Supp. 1504, 1508–09 (E.D.N.Y.1986). More recently, the Second Circuit offered implicit support for the distinction between an action under the IDEA following an administrative hearing and an action challenging compliance with the IDEA

more generally. *See Heldman v. Sobol,* 962 F.2d 148, 158 n. 10 (2d Cir.1992) (noting that the four month statute of limitations would apply if plaintiff's complaint "constituted an appeal from the Commissioner's decision" and citing *Adler*). The Court shall, therefore, apply the three year statute of limitations to this action governing actions under Section 1983.[4]

### (4) PUNITIVE DAMAGES

■ Defendants contend that punitive damages are not available against the School District or the individual defendants *acting in their official capacities.* The Supreme Court has determined that punitive damages are not available in an action against a municipality under 42 U.S.C. § 1983. *See City of Newport v. Fact Concerts,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Plaintiffs do not contest this assertion, and seek punitive damages only from the individual defendants. Such damages are permissible. *Quackenbush,* 716 F.2d at 148. There is, in short, no controversy about whether punitive damages are available against individual defendants sued in their individual capacities.[5]

### (5) QUALIFIED IMMUNITY

■ The individual defendants claim entitlement to qualified immunity from a suit for damages under the doctrine of *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Harlow,* the Supreme Court held that:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

Under *Harlow,* the Court must determine first whether the rights that plaintiffs now seek to vindicate were "clearly established"

---

**3.** Plaintiffs look to 42 U.S.C. § 1983 as their federal *remedy* for the defendants' alleged deprivation of substantive federally protected *rights* under the IDEA and its statutory and constitutional cousins.

**4.** Plaintiffs also urge the Court to toll the statute of limitations during Luke's infancy, in accordance with CPLR § 208. In their reply to plain-

tiffs' opposition, defendants did not address the question of tolling, but merely reiterated their misplaced reliance on *Adler*. The Court shall respect the tolling provisions of CPLR § 208.

**5.** The individual defendants seek qualified immunity, however.

and second, whether a reasonable official would have believed that his actions did not violate those rights. *See Piesco v. City of New York, Dep't of Personnel,* 933 F.2d 1149, 1160 (2d Cir.), *cert. denied,* 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

The statutes under which plaintiffs claim clearly provided that Luke was entitled to a free appropriate education, and clearly specified the procedures that school officials were obliged to follow in providing that education, including informing the Masons of their procedural rights and promptly establishing individualized educational plans for Luke.

The plaintiffs allege that the individual defendants, in failing to inform them of the procedural rights, clearly violated the IDEA and section 4402 of the state Education Law, both of which require officials to give such notice. Moreover, plaintiffs claim that the law and the regulations implementing it impose strict deadlines for evaluating children and formulating individualized educational plans. For example, they complain about the defendants' five month delay in conducting a comprehensive evaluation of Luke after he returned to the School District in May, 1992. *See* Aff. of Sandra Mason at ¶ 96–97, 100; Aff. of Cailie Currin at ¶¶ 49–51 (plaintiffs' counsel advised Defendant Benson of procedural shortcomings in May, 1992, but Benson failed to correct them).

Defendants claim qualified immunity primarily on the grounds that Luke's was a difficult case, given the intervention of various other agencies, including the Family Court, the failure of those agencies to apprise the School District of Luke's status or custody, and given Luke's own lack of cooperation. These reasons for granting immunity are not persuasive. The Court presumes that most children with emotional and other developmental disorders present difficult cases. In fact, the difficulties are precisely what inspired the elaborate state and federal statutory protections. The Court, therefore, refuses to grant the individual defendants qualified immunity and shall deny the motion for summary judgment on this basis.

### (6) POLICY OR CUSTOM OF THE SCHOOL DISTRICT

█ Plaintiffs have adequately alleged a policy or custom of the School District and supported the allegation with facts sufficient to survive the present summary judgment motion. First, the complaint puts the defendants on notice of the claim. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* —— U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957) (federal rules require only "grounds upon which [plaintiff's claim] rests").

Moreover, the affidavit of Sandra Mason details the history of the School District's refusal to inform her and Luke of their procedural rights under the law. This refusal, allegedly spanning many years, was not a single instance of oversight. In addition, plaintiffs propound a report of the State Education Department from which a jury could infer a policy of placing emotionally disturbed students in restrictive settings. *See* Currin Aff. at ¶ 29 & Exh. 10.

Drawing inferences in favor of the non-moving party, a reasonable jury could conclude that the School District had a policy of flouting federal laws benefitting children with educational and other handicaps. The Court, of course, confines itself to the narrow inquiry on a motion for summary judgment and expresses no opinion on the merits of these or other factual contentions. The Court must, therefore, deny the motion for summary judgment with respect to the School District's alleged policy or custom.

### Conclusion

For the foregoing reasons, the Court denies the motion for summary judgment in its entirety. Because this Memorandum Decision and Order denies the individual defendants the benefits of qualified immunity, and because such a denial is subject to immediate appeal, the Court directs the Clerk to enter judgment on this order in conformance with Federal Rules 58 and 79.

IT IS SO ORDERED.