Wayne **RABIDEAU,** Individually and as Parent and Legal Guardian of Alyssa Rabideau, and Joann Rabideau, Individually and as Parent and Legal Guardian of Alyssa Rabideau, Plaintiffs,

v.

**BEEKMANTOWN CENTRAL SCHOOL DISTRICT,** Defendant.

**No. 98–CV–1158.**

United States District Court, N.D. New York.

March 23, 2000.

Poklemba, Hobbs & Ulasewicz, L.L.C., Saratoga Springs, NY (Gary C. Hobbs, of counsel), for plaintiffs.

Miller, Mannix & Pratt, P.C., Glens Falls, NY (Eileen M. Haynes, Benjamin Pratts, Jr., of counsel), for defendant.

### MEMORANDUM—DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

On July 21, 1998, plaintiffs commenced the instant action pursuant to 42 U.S.C. § 1983 for violations of their rights under the First and Fourteenth Amendments, and the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485. Plaintiffs also assert state law causes of action for negligence, respondeat superior, recklessness, and battery. The defendant moved for partial summary judgment, seeking dismissal of plaintiffs'

federal claims.[1] Plaintiffs opposed. Oral argument was heard on December 17, 1999 in Utica, New York. Decision was reserved. Supplemental briefs and affidavits were requested to address the issue of IDEA's requirement that administrative remedies be exhausted before a civil action may be filed. Plaintiffs filed supplemental papers on February 18, 2000; the defendant's supplemental papers were filed on February 22, 2000.

## II. *FACTS*

Alyssa Rabideau ("Alyssa") is a nine-year old student at Cumberland Head Elementary School, located within the defendant Beekmantown Central School District ("District" or "defendant"). Alyssa was born with congenital hydrocephalus (water on the brain). Secondary effects of this condition include seizures, for which Alyssa is administered medication three times per day. Her second dosage is administered by the school nurse. On September 16, 1997, a substitute nurse gave Alyssa an overdose of her medication which caused Alyssa various physical injuries. On October 16, 1997, Alyssa's parents filed a notice of claim against the District, pursuant to N.Y.Gen.Mun.Law §§ 50-e and 50-i and N.Y.Educ.Law § 3813. This is one of the bases for plaintiffs' state law causes of action. This motion involves subsequent events occurring at the school which form the bases for plaintiffs' federal causes of action.

In the beginning of the 1997–1998 school year, the Cumberland Head Elementary School nurse, Jody Branch, sent a notice to all parents of children in the first grade that the school would be conducting physicals of all first grade students on October 15, 1997. If the parent did not want the physical performed, they were to complete a form informing the school of when and by whom their child would receive a physical. Alyssa's mother, plaintiff Joann Rabideau ("Mrs.Rabideau"), completed the form, indicating that Alyssa's pediatrician would perform her physical. The plaintiffs contend that, on October 15, 1997, a school physical was performed on Alyssa anyway. The District asserts that Alyssa came to the nurse's office on October 15, 1997, complaining of ear pain and the doctor merely looked at her ear, but did not perform a physical.

In September of 1998, pursuant to Alyssa's Individualized Education Program ("IEP"), Alyssa began the school year attending Susan Beebie's ("Mrs.Beebie") regular second grade class. Alyssa was also to receive 180 minutes of special education with Leslie LaValley ("Mrs.LaValley"). However, due to the extensive amount of time Alyssa was spending in her special education class, Alyssa was transferred to Mrs. LaValley's class full-time, but she continued to attend certain regular classes with Mrs. Beebie. Mrs. LaValley maintained a student journal on Alyssa to record her behavior during the day. Plaintiffs contend that transferring Alyssa without their consent and without altering or amending Alyssa's IEP violates IDEA.

In late September and early October of 1998, Alyssa refused to stand for or recite the Pledge of Allegiance or participate in other aspects of the morning routine. Plaintiffs claim that Alyssa was scolded in front of the other students, was removed from class, and, on one occasion, was taken to the principal's office, solely for her failure to participate in the Pledge of Allegiance. In addition, plaintiffs allege, Alyssa was removed from recess, art, and music, and separated from her classmates during class and at lunch to punish her for her failure to participate in the Pledge of Allegiance. The District denies these allegations.

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affida-

---

1.  Defendant also requested that if plaintiffs' federal claims are dismissed, that the court decline to exercise supplemental jurisdiction over the remaining state law claims

vits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.,* 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost,* 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.,* 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.,* 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. *Fourteenth Amendment Claim*

#### 1. *Unauthorized Physical Examination*

The defendant claims that Alyssa was never subjected to an unauthorized physical examination and, therefore, there was no violation of her Fourteenth Amendment right to bodily integrity. The plaintiffs, however, assert that, when viewed in a light most favorable to them, it is reasonable to infer that Alyssa was subjected to a physical examination without her parents' consent. There is a genuine issue of material fact exists with respect to this issue. However, since the District is the only defendant, for the reason discussed below, plaintiffs' claim must nevertheless be dismissed.

#### 2. *Liability of the District*

■ Local governments cannot be held liable under § 1983 based on the theories of respondeat superior or vicarious liability. *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A local government can be found liable under § 1983 only where

> [T]he action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. Moreover ... local governments ... may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not reached formal approval through the body's official decision-making channels.

*Id.* at 690–91, 98 S.Ct. 2018. Thus, an unconstitutional governmental policy may be inferred either from the official pronouncements and actions of the governmental agency or from custom. A governmental policy may also be imposed for a single decision by a local government official who has final policymaking authority. *See Pembaur v. Cincinnati,* 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also Krulik v. Board of Educ.,* 781 F.2d 15, 23 (2d Cir.1986) (stating that "an individual official's acts can rise to the

level of 'policy' when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior").

In the present case, the plaintiffs have failed to allege or submit any evidence that Alyssa was subjected to an unauthorized physical examination pursuant to an unconstitutional policy or custom of the District. Accordingly, plaintiffs' Fourteenth Amendment claim must be dismissed. This, of course, does not dismiss any state law causes of action which are based upon the alleged physical examination of Alyssa. The District may be liable for the acts of its employees under the doctrine of respondeat superior for such claims.

## C. *First Amendment Claim*

### 1. *Pledge of Allegiance*

█ It is well established that a school may not require its students to stand for or recite the Pledge of Allegiance or punish any student for his/her failure to do so. *See West Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); *Russo v. Cent. Sch. Dist. No. 1*, 469 F.2d 623 (2d Cir.1972), *cert. denied*, 411 U.S. 932, 93 S.Ct. 1899, 36 L.Ed.2d 391 (1973).

The defendant claims that there is no evidence that Alyssa was required to stand for or recite the Pledge of Allegiance, nor that she was punished or disciplined for her failure to do so. However, the record contains evidence which suggests otherwise.

Alyssa's refusal to participate in the Pledge of Allegiance was clearly a source of frustration for her special education teacher, Mrs. LaValley. There are several entries in Alyssa's student log where Mrs. LaValley criticized Alyssa's failure to stand for or recite the Pledge. (Hobbs Aff.Ex. O at 1, 2, 4, 8–10, 12.) Three entries in particular indicate that Alyssa was disciplined for her refusal to participate in the Pledge. First, on September 28, 1998, Mrs. LaValley reported

Alyssa started the day off by refusing to do the pledge again. I took her out in the hall to talk to her and she said she would cooperate. When we returned to the room, she refused again. I took her to the office, where she spent some time with Mrs. Murdock.

*Id.* at 1. Mrs. LaValley testified in her deposition that she discussed with the school principal, Karen Murdock ("Principal Murdock"), the reason why Alyssa was brought to the office, but that she didn't recall the substance of the conversation. (Haynes Aff.Ex. 6 at 35.) However, it is reasonable to infer that, since the student log only reported Alyssa's failure to participate in the Pledge, that this was the subject of Mrs. LaValley's discussion with Principal Murdock.

A second entry, on September 29, 1998, reported that Alyssa again refused to say the Pledge and refused to thank the girls who walk her from the bus. (Hobbs Aff. Ex. O at 2.) Her desk was separated from the other students in the class until she decided to cooperate. The final key entry was on October 6, 1998, wherein Mrs. LaValley stated that "Alyssa would not stand for the pledge (but was helped by Mrs. Myers)." *Id.* at 8. Mrs. LaValley testified that Alyssa's aide, Mrs. Myers, may have physically helped Alyssa stand up. (Haynes Aff.Ex. 6 at 68.)

In addition to the student log entries, Mrs. LaValley testified that she spoke to Alyssa in the classroom in front of the other students about her refusal to participate in the Pledge of Allegiance. *Id.* at 30, 71. She also discussed this problem with Principal Murdock. *Id.* at 46. Mrs. Rabideau testified that Mrs. LaValley had told her that Alyssa was not allowed to go to recess as punishment for not saying the Pledge of Allegiance. (Haynes Aff.Ex. 5 at 61.) Mrs. Rabideau also testified that Principal Murdock had explained a plan devised by her and Mrs. LaValley to make Alyssa behave, whereby they could legally separate her from the other students during class, take away Alyssa's music, art,

and recess, and make her sit on the school stage during lunch. *Id.* at 62.

In light of the foregoing, there is sufficient evidence demonstrating that a question of fact exists concerning whether Alyssa was punished solely for her refusal to participate in the Pledge of Allegiance.

### 2. *Liability of the District*

The District next claims that, even if Alyssa was punished for her refusal to stand for or recite the Pledge of Allegiance, pursuant to *Monell*, 436 U.S. 658, 98 S.Ct. 2018, the District cannot be held liable because the plaintiffs have not alleged any official policy or custom of requiring students to stand and recite the Pledge of Allegiance. While the defendant's assertion is correct, the plaintiffs' First Amendment claim may survive summary judgment if they can establish that Principal Murdock knowingly acquiesced in a subordinate's behavior and had final policymaking authority which is attributable to the District. *See Krulik*, 781 F.2d at 23.

The question of whether a particular individual has policymaking authority is a question of state law. *Pembaur*, 475 U.S. at 483, 106 S.Ct. 1292. Such individuals "can be identified by their receipt of such authority through express legislative grant, or through their delegation of policymaking authority from those to whom the power has been expressly granted." *Soto v. Schembri*, 960 F.Supp. 751, 757 (S.D.N.Y.1997).

The District claims that under New York law, the board of education is the final policymaker with respect to establishing rules and regulations for order and discipline in the schools. *See* N.Y.Educ.Law § 1709(2) (McKinney 1988).[2] However, the legislature only intended to impose upon the board of education general duties relating to generally

setting up and maintaining the educational system, courses of study, and policies. *Luce v. Board of Educ.*, 2 A.D.2d 502, 505, 157 N.Y.S.2d 123, 127 (3d Dep't 1956), *aff'd*, 3 N.Y.2d 792, 143 N.E.2d 797, 164 N.Y.S.2d 43 (1957). The legislature did not intend to impose upon the board of education a duty to make and assume direct responsibility of enforcing rules reaching down into each classroom in the school system. *Id.* Principal Murdock, as principal of Cumberland Head Elementary School, was the highest ranking person in the school. By virtue of her position, she was directly responsible for discipline in her school and supervision over the teachers. As previously discussed, the evidence suggests that Principal Murdock knew Alyssa's special education teacher, Mrs. LaValley, was disciplining Alyssa for her failure to participate in the Pledge of Allegiance. Principal Murdock's knowledge of her subordinate's behavior and acquiescence, if not direct participation, in the conduct amounts to a custom or policy attributable to the District. *See Krulik*, 781 F.2d at 23. Therefore, defendant's motion for summary judgment on plaintiffs' First Amendment claim must be denied.

### D. *IDEA Claim*

In plaintiffs' amended complaint, they assert that IDEA was violated by "removing [Alyssa] from mainstream activities for behavior directly connected to her disability: [and] effectively preventing her from receiving a 'free appropriate public education' by depriving her of school activities and removing her from mainstream activities." (Am.Compl.¶ 27.) Plaintiffs then explain in their papers in opposition to defendant's summary judgment motion that their IDEA claim is predicated on their assertion that Alyssa's IEP was altered, without notice to or the consent of Alyssa's parents, by removing her from

---

2. This section provides that the board of education has the power "[t]o establish such rules and regulations concerning the order

and discipline of the schools, in the several departments thereof, as they may deem necessary to secure the best educational results."

Mrs. Beebie's regular second grade class and placing her in Mrs. LaValley's special education class full time. The defendant asserts that plaintiffs' claim regarding the alteration of Alyssa's IEP is a new theory, which should be rejected now that the time for amending the complaint. has passed and discovery is complete. However, whichever theory is adopted, plaintiffs' IDEA claim must nevertheless be dismissed for failure to exhaust administrative remedies.

IDEA was enacted to ensure that all children with disabilities receive "a free appropriate public education that emphasizes special education and related services designed to meet their unique needs", 20 U.S.C. § 1400(d)(1)(A), as well as "to ensure that the rights of children with disabilities and parents of such children are protected." § 1400(d)(1)(B).

In order to receive federal financial assistance, a state must have a policy in effect which provides procedural safeguards to ensure a student's right to free and appropriate education. § 1415. One safeguard concerns the procedure by which each child with a disability is individually evaluated to determine his/her educational needs and an IEP is developed. *See* § 1414. The IEP is a written statement which includes statements of the child's present levels of educational performance, annual goals, the special educational and related services to be provided, and the extent to which the child will not participate with nondisabled children in regular classes and activities. § 1414(d). "The Act contains a strong focus on involving the handicapped child's parents, teacher, and a representative of the local educational agency in the formulation of an [IEP] tailored to the particular needs of the handicapped student." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 751 (2d Cir.1987). Parents are given the opportunity to participate in the "identification, evaluation, and educational placement of [their] child." § 1415(b).

If there is any proposed change in the child's IEP, the parents must be so notified in writing. § 1415(b)(3). In addition, parents are entitled to "present complaints with respect to any matter relating to the identification, evaluation, or educational placement of the child." § 1415(b)(6). When a complaint is brought, the parents have a right to an impartial due process hearing conducted by the state or local educational agency. § 1415(f)(1). If the hearing is conducted by the local agency, the aggrieved party may appeal to the state educational agency. § 1415(g). Any party aggrieved by the findings and decisions made after the state administrative hearing may then bring an action in state or federal court. § 1415(i)(2). Thus, an aggrieved party may bring a civil action only when administrative procedures have been exhausted, unless the party can show that one of the three exceptions to the exhaustion requirement have been met. The three circumstances under which exhaustion of administrative remedies is not required are: 1) Exercise of the administrative remedies would be futile, 2) the agency has adopted a policy or practice of general applicability that is contrary to law, or 3) it is improbable that adequate relief can be obtained in the administrative process. *See Mrs. W.*, 832 F.2d at 756; *see also Quackenbush v. Johnson City Sch. Dist.*, 716 F.2d 141, 147–48 (2d Cir.1983), *cert. denied*, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984).

State and federal jurisdiction is limited to hearing appeals from decisions made after an impartial due process hearing. *See* § 1415(i)(2). Thus, the failure to exhaust available administrative remedies deprives the court of subject matter jurisdiction. *See Stellato v. Board of Educ.*, 842 F.Supp. 1512, 1515 (N.D.N.Y.1994) (McAvoy, C.J.); *Vander Malle v. Ambach*, 667 F.Supp. 1015, 1029 (S.D.N.Y.1987).

In the instant case, the plaintiffs concede that they were advised of the change in Alyssa's placement (albeit after the fact) did not attempt to pursue the state admin-

istrative remedies available to them pursuant to N.Y.Educ.Law § 4404 (McKinney 1995). In fact, it appears that, while the plaintiffs had concerns about the change, they did not object to it. In response to plaintiffs' concerns, Mrs. LaValley agreed to keep a daily log of Alyssa's activities. In addition, there is no evidence that any of the exceptions to the exhaustion requirement applies in this case.

The plaintiffs contend that, like the plaintiffs in *Mason v. Schenectady City Sch. Dist.*, 879 F.Supp. 215 (N.D.N.Y. 1993), they should be excused from the exhaustion requirement because the school district never provided them with any notice of their procedural rights concerning the decision to change Alyssa's second grade placement. However, plaintiffs' situation is factually distinguishable from *Mason*. In *Mason*, the school district persistently failed to inform the plaintiff of the procedural safeguards available under IDEA. *See id.* In the present case, however, whenever the Committee for Special Education met to evaluate Alyssa's educational placement, the plaintiffs were sent a notice of their due process rights and a list of available legal services. (Dupra Aff. ¶ 5; Haynes Aff.Ex. 2.) In fact, in response to defendant's request for copies of educational records within plaintiffs' possession, the plaintiffs submitted a copy of the due process notice as well as a notice of the procedures for an impartial hearing which they received from the district. (Haynes Aff.Ex. 1.) Thus, while the plaintiffs may not have been provided with a specific notice of their due process rights with respect to Alyssa's second grade placement, the evidence demonstrates that on several prior occasions, the plaintiffs were informed of their rights under IDEA. *See Buffolino v. Board of Educ.*, 729 F.Supp. 240, 246 (E.D.N.Y.1990) (holding plaintiffs not excused from exhaustion requirement where, on a prior occasion, they were provided with two guidebooks which informed them of their due process right to an impartial hearing) Therefore, plaintiffs' IDEA claim must be dismissed.

## IV. CONCLUSION

Accordingly, it is

ORDERED, that

1) Defendant's motion for partial summary judgment is GRANTED in part and DENIED in part;

2) Defendant's motion is GRANTED to the extent that

a) Plaintiffs' Fourteenth Amendment claim alleging that Alyssa was subjected to an unauthorized physical examination is dismissed for failure to allege an unconstitutional custom or policy on the part of the District, and

b) Plaintiffs' IDEA claim is dismissed for failure to exhaust administrative remedies; and

3) Defendant's motion is DENIED in all other respects.

IT IS SO ORDERED.