Mary MARINO, individually and on behalf of her minor infant son, A.M., and Theresa Decker, individually and on behalf of her minor infant daughter, E.J., Plaintiffs,

v.

CHESTER UNION FREE SCHOOL DISTRICT, Defendant.

Nos. 09 Civ. 9676 (JFK), 09 Civ. 9677 (JFK).

United States District Court, S.D. New York.

March 14, 2012.

John R. Kelly, Law Offices of John R. Kelly, Bronx, NY, for Plaintiffs.

Mark Craig Rushfield, Shaw, Perelson, May & Lambert, LLP, Poughkeepsie, NY, for Defendant.

## MEMORANDUM OPINION AND ORDER

JOHN F. KEENAN, District Judge.

Before the Court is Defendant Chester Union Free School District's ("School District" or "Defendant") motion for summary judgment on Plaintiff Mary Marino ("Marino") and Plaintiff Theresa Decker's ("Decker") (collectively, "Plaintiffs") claims under 42 U.S.C. § 1983 and Article 1 §§ 6, 12 of the New York Constitution, which they have brought individually and on behalf of their minor children. For the reasons that follow, the motion is granted in part and denied in part.

### I. Background

All facts are taken from the parties' Rule 56.1 statements, unless otherwise noted. At the time of the events at issue in this litigation, Marino's son, A.M., was thirteen-years-old and Decker's daughter, E.J., was fourteen-years-old. (Def.'s Rule 56.1 Statement 12). Both were students at Chester Middle School, which is located within the School District. A.M. had received thirteen disciplinary infractions during the 2007–2008 school year and E.J. had received twelve infractions. Most of these infractions involved disruptive behavior and tardiness, and neither student had been cited for possession of illegal substances. (*Id.* ¶¶ 26–27).

On April 7, 2008, Ernest Jackson ("Jackson"), who was then middle school principal, learned from a hall monitor that A.M. and E.J. may have been smoking cigarettes in the hallway of the school, in contravention of school rules. (Jackson Depo. at 78). A.M. and E.J. were summoned to the Nurse's office separately, where Jackson and the school nurse, Carol Schug ("Schug"), conducted an investigation. (Def.'s Rule 56.1 Statement ¶¶ 16–13).

A.M. arrived at Schug's office first and was escorted into the examination room. According to Jackson, he instructed A.M. only "to empty his pockets" and take off his shoes. After that, Jackson states, A.M. voluntarily lifted his shirt. Marino states, however, that her son was directed to empty his pockets, remove his pants, shirt, undershirt, socks, shoes, and to shake out his underwear. (*Id.* ¶ 20).

Next, E.J. reported to the Nurse's office for the investigation. (*Id.* at 92). Jackson instructed Schug to model her search of E.J. after Jackson's search of A.M. (Schug Depo. at 25). According to Schug, Jackson chose not to be present for the search of E.J. because he believed it was more appropriate for a woman to conduct the search. (*Id.*). Schug states that she asked E.J. to empty her pockets and remove her shoes. Decker, however, states that her daughter was directed to remove her shoes, lift each pant leg, lift her shirt, and shake out her bra while Schug looked up E.J.'s shirt.

Plaintiffs claim that the School District, through its agents and employees, improperly strip searched their children. As a result, Plaintiffs allege, their children suffered "humiliation and embarrassment, emotional distress, violation of the bodies of the Plaintiffs, as well as violation of their civil rights and liberties." (Compl. ¶¶ 4, 5, 6). Plaintiffs have also brought suit under § 1983 as individuals, based upon their children's emotional distress.

## II.  Discussion

### A.  Summary Judgment Standard

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the nonmovant's favor." *Beyer v. County of Nassau,* 524 F.3d 160, 163 (2d Cir.2008) (citing *Guilbert v. Gardner,* 480 F.3d 140, 145 (2d Cir.2007)). Thus, when determining whether such factual issues exist, the Court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Dallas Aerospace, Inc. v. CIS Air Corp.,* 352 F.3d 775, 780 (2d Cir.2003). Summary judgment is appropriate when the nonmoving party has no evidentiary support for an essential element for which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 743 (2d Cir.2003) (alterations in original).

The parties' allegations demonstrate that there are strong disputes over the material facts, most importantly, whether the students were strip searched. As such, Defendant's motion for summary judgment rests largely on legal, as opposed to factual, grounds. First, Defendant argues that Decker and Marino cannot assert claims as individuals. Second, Defendant argues that the § 1983 claims Plaintiffs have asserted on behalf of their children are improper because the School District cannot be held liable for the acts of the principal and school nurse. Third, Defendant states that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state claim, or, in the alternative, grant summary judgment because the Plaintiffs did not satisfy the state's notice requirement.

### B.  § 1983 Claims

#### i.  Plaintiffs in Their Individual Capacity

It is well-settled that standing for the purpose of a § 1983 claim is not conferred solely on the basis of harm to plaintiff's family member. *See T.C. v. Valley Cent. Sch. Dist.,* 777 F.Supp.2d 577, 589 (S.D.N.Y.2011). Instead, where minor children are the real parties in interest, parents appropriately bring litigation on their children's behalf. *See Collins v. West Hartford Police Dep't,* 324 Fed.Appx. 137, 139 (2d Cir.2009); *Bliss v. Putnam Valley Cent. Sch. Dist.,* No. 06 Civ. 15509, 2011 WL 1079944, at *3 (S.D.N.Y. Mar. 24, 2011); *Harrison v. Harlem Hosp.,* No. 05 Civ. 8271, 2007 WL 2822231, at *4 (S.D.N.Y. Sept. 28, 2007); *Morgan v. City of New York,* 166 F.Supp.2d 817, 820 (S.D.N.Y.2001) (dismissing mother's § 1983 claims because she "lacks standing to bring individual claims under § 1983

based upon a deprivation of her daughter's constitutional rights"). Therefore, Plaintiff's individual claims, which are based only on the alleged strip search of their children, warrant summary judgment, leaving only the claims they bring in their representative capacities.

### ii. School District's Liability

A municipality and its agencies may not be held liable for the actions of its employees under a broad *respondeat superior* theory; rather, they can be held liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Walker v. City of New York,* 974 F.2d 293, 294 (2d Cir.1992). Accordingly, taking the facts in the light most favorable to Plaintiffs, the School District will not be held liable for Jackson's alleged strip searches of A.M. and E.J. unless Jackson was following a custom or policy of the School District.

To determine whether a municipal actor, such as a school principal, can trigger a municipality's liability, the Supreme Court has set forth a number of guiding principles. First, only those actions by municipal officials who are vested with "final policymaking authority" may subject the municipality to § 1983 liability. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (plurality opinion). Whether an individual actor has "final policymaking authority" is a question of state law for the court to decide. *Id.* (plurality opinion). Second, the challenged action must have been taken pursuant to a policy adopted by the official responsible under state law for making policy in that area of the school's operations. *Id.* at 482–83 n. 12, 106 S.Ct. 1292 (plurality opinion). Based upon these

principles, the Court must first determine whether Jackson was vested with policymaking authority, and then determine whether the alleged strip searches reflected a policy or custom adopted by Jackson.

■ Defendants have argued that, under state law, only the School District has policymaking authority, and because it did not have a policy on strip searching, it cannot be held liable under § 1983. (Def. Mem. at 7). Indeed, New York Education Law § 1709(2) provides that the board of education for a school district has the power "[t]o establish such rules and regulations concerning the order and discipline of the schools, in the several departments thereof, as they may deem necessary to secure the best educational results."

However, while broad rulemaking authority is vested in the school board by law, policymaking authority may not be so strictly limited. As a practical matter, principals are the highest ranking officials in the school and thus have policymaking authority in the day-to-day operations of the school. "A school principal has final policymaking authority in the management of the school and her conduct represents official district policy within the purview of the school." *T.Z. v. City of New York,* 635 F.Supp.2d 152, 179 (E.D.N.Y.2009); *see Lovell v. Comsewogue Sch. Dist.,* 214 F.Supp.2d 319, 324 (E.D.N.Y.2002) (to possess authority, a person "need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, she must be 'responsible under state law for making policy in that area of the [municipality's] business.'" (quoting *Jeffes v. Barnes,* 208 F.3d 49, 56 (2d Cir. 2000))); *Rabideau v. Beekmantown Cent. Sch. Dist.,* 89 F.Supp.2d 263, 268 (N.D.N.Y.2000).

In response to a question about the established procedure for student searches

in the School District, Jackson testified at deposition that, "[e]verything inside that school okay, is under control of the school and the leaders in there." (Jackson Depo. at 55). This statement supports the conclusion that the School Board delegated disciplinary matters to Jackson's discretion; as such, he could set policy. Therefore, Jackson may be deemed a policymaker under *Monell* for the purposes of § 1983 liability.

■ Next, the Court will consider whether the searches of A.M. and E.J. were school policy created by Jackson in his capacity as policymaker. The Court will not address the merits of the parties' divergent versions of events, but rather will determine whether the searches, in whatever manner they were executed, could represent school policy. At his deposition, Jackson stated that the school board did not have a policy regarding searches of a student's person, admitting that, when checking students for contraband, he modeled the searches after state law and what he perceived as airport security protocol. (Jackson Depo. at 51). Helen Ann Livingston, the former superintendent of the Chester School District, could not recall the Board's policy regarding student searches. (Livingston Depo. at 55). Schug stated that she observed Jackson conduct the search of A.M., and that Jackson instructed her to search E.J. in the same manner. (Schug Depo. at 38). These statements permit the inferences that the school board did not adopt a policy on student searches, deciding to leave such policy determinations in Jackson's discretion, and that Jackson fashioned his own policy, which he instructed his subordinates to follow. Accordingly, it is plausible that the searches of A.M. and E.J., whether or not they were strip searches, as Plaintiff has alleged, represented school policy.

## C. New York Constitution Claim

Defendant has also moved for summary judgment on Plaintiffs' state law claims. Because Defendant's first ground for summary judgment rested on the assumption that the § 1983 claim would be dismissed, the Court will consider only Defendant's second ground for summary judgment, inadequate notice. According to Defendant, Plaintiffs are barred from asserting the state law claims because they specified only federal civil rights claims in the notice of claim served upon the School District.

■ Section 3813(1) of New York State Education Law provides that no action may be maintained against a school district unless notice of claim was served within three months of the date on which the claim accrued. *Parochial Bus Sys., Inc. v. Bd. of Educ.*, 60 N.Y.2d 539, 547, 470 N.Y.S.2d 564, 458 N.E.2d 1241 (1983); *Consolidated Constr. Group, LLC v. Bethpage Union Free Sch. Dist.*, 39 A.D.3d 792, 835 N.Y.S.2d 630 (2007) ("The requirement of Education Law § 3813(1) that a notice of claim be served upon a school district in an action arising from a contract within three months from accrual of the claim is a condition precedent to maintaining such action."). The notice of claim must satisfy the requirements of General Municipal Law § 50–e, which include statements of both "the nature of the claim" and "the items of damage or injuries claimed to have been sustained." *See Fincher v. County of Westchester*, 979 F.Supp. 989, 998 (S.D.N.Y.1997) (a "cause of action or theory of liability" that is "directly or indirectly mentioned in the notice of claim may ... be included in a subsequent lawsuit"). The purpose of a notice of claim is to allow the municipality to investigate complaints adequately. *See Hemrie v. City of New York*, No. 96 Civ. 213, 2000 WL 1234594, at

*2 (S.D.N.Y. Aug. 31, 2000) (citing *Fincher*, 979 F.Supp. at 1002).

■ "The test of the sufficiency of a notice of claim is whether it includes enough information to enable the municipality to investigate the claim adequately." *Lieber v. Village of Spring Valley*, 40 F.Supp.2d 525, 531 (S.D.N.Y.1999) (citing *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687, 429 N.E.2d 1158 (1981)). Courts have emphasized the nature of the claim and the theory of liability, rather than the specifically enumerated cause of action, in evaluating the sufficiency of a notice of claim. *Hemrie*, 2000 WL 1234594, at *2. Indeed, "a theory of liability related to or implied by what is clearly stated in the notice of claim may constitute sufficient mentioning such that it should be permitted to proceed." *Torres v. City of New York*, No. 25186/05, 21 Misc.3d 1109(A), 2008 WL 4514272, at *4 (N.Y.Sup.Ct., Sept. 8, 2008); *see also De-Leonibus v. Scognamillo*, 698, 183 A.D.2d 697, 583 N.Y.S.2d 285 (1992) ("The courts have not interpreted [Section 50–e(2) ] to require that a claimant state a precise cause of action *in haec verba* in a notice of claim.").

■ The notices of claim that Plaintiffs served on the School District indicates that the "nature of the claim" encompassed "deprivation of Claimant's civil liberties including but not limited to violating Fourth Amendment rights after the Claimant was unreasonably searched [and] unreasonably strip searched." The subsequently filed Complaints asserts three causes of action: violation of Plaintiffs' Fourth Amendment right against unreasonable search and seizure, violation of Plaintiffs' due process rights under the Fifth Amendment, and violation of Plaintiffs' rights under the New York State Constitution to due process and against unreasonable search and seizure.

Because Plaintiffs' claims under the state constitution are analogous to their claims under the U.S. Constitution, the notice of claim complies with § 3813(1) and § 50–e. Upon receiving notice of the federal claim from Plaintiffs, the School District likely commenced an investigation into the events leading up to and during the alleged strip search, which would have been the same course of action undertaken had the notice specifically mentioned the state law claim. The notice of claim sufficiently asserts civil liberties violations such that the School District could adequately investigate the claim. *See Kirk v. Metro. Trans. Auth.*, No. 99 Civ. 3787, 2001 WL 258605, at *5 (S.D.N.Y. Mar. 14, 2001) (finding sufficient notice of claim where plaintiffs alleged "bodily ... injuries" and subsequently sued for battery); *Niles v. City of Oneida*, No. 06 Civ. 1492, 2009 WL 799971, at *3 (N.D.N.Y. Mar. 25, 2009) (permitting plaintiff to sue for false imprisonment where notice of claim cited only negligence, civil rights violations, and assault, on the grounds that the municipality's investigation into the events at issue would not have changed). Therefore, the School District had adequate notice of Plaintiffs' state law claims such that they made proceed to trial.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted with, respect to claims asserted by Plaintiffs Decker and Marino as individuals. Summary judgment is denied with respect to the § 1983 and state law claims. The settlement conference of March 27, 2012 is adjourned until April 10, 2012 at 11 a.m. **SO ORDERED.**